167 N.J. Super. 410 (1979)
400 A.2d 1217
JOHN K. HOKE AND JEAN M. HOKE, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
PIONEER STATE BANK AND EUGENE W. ROGERS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1979.
Decided April 10, 1979.
*411 Before Judges LORA, MICHELS and LARNER.
Mr. Charles W. Heuisler argued the cause for appellants (Messrs. Archer, Greiner & Read, attorneys).
Mr. Robert J. Partlow argued the cause for respondents (Messrs. Parker, McCay & Criscuolo, attorneys).
The opinion of the court was delivered by LARNER, J.A.D.
Plaintiffs instituted this action against Pioneer State Bank to recover a loss sustained because of *412 the bankruptcy of a stockbroker to whom the bank entrusted plaintiffs' securities for redemption.
Plaintiffs held two $25,000 bond anticipation notes of the City of New York and requested Mr. Rogers, the bank's officer, as an accommodation, to process them for redemption on the due date. The bonds were payable by the Chemical Bank of New York. And since the bank was located in Camden County, and Mrs. Hoke was anxious to obtain immediate payment because of publicity about the financial distress of the City of New York, Rogers forwarded the notes on August 21, 1975 to a New York broker by registered and insured mail, so that he would physically present them for payment to Chemical Bank on the due date.
The broker did present the notes on the due date, August 22, 1975, and Chemical Bank credited the account of the broker, Scott Gorman Municipals, Inc., for the full proceeds. Scott Gorman did not remit the funds to Pioneer Bank and on September 2, 1975 filed a petition in bankruptcy. As a result thereof, the proceeds from the redemption were frozen by the bankruptcy court and the claim to them has not as yet been resolved.
The complaint alleged several theories of liability sounding in negligence, breach of a fiduciary duty and breach of contract. The case was tried before a judge and jury, and at the completion of the presentation of evidence the judge submitted the case to the jury only on the issue of negligence of defendants. This submission was consistent with the court's denial of defendants' motion to dismiss at the end of plaintiffs' case which addressed the lack of sufficient evidence of negligence and proximate cause for jury determination.
The jury returned a verdict in favor of plaintiffs in the sum of $53,326.98, representing the amount of their loss and a judgment was entered accordingly. A subsequent motion for new trial or judgment n.o.v. was denied, and defendants appeal from the judgment as entered and the denial of the motion.
*413 In his charge to the jury the judge articulated only one factual basis for negligence or proximate cause, i.e., the circuitous route by which the bank submitted the notes for redemption. Plaintiffs in their appellate brief point to the testimony of an expert that the "normal" procedure is to send bonds directly to the paying agent, and rely solely upon the method of presentment through the broker as the crux of proof of negligence on the part of the bank and its causal relationship with the loss occasioned by the broker's bankruptcy.
While appellants submit multiple grounds for reversal, our view of the essence of this appeal requires consideration only of a single issue, namely, whether plaintiffs made out a prima facie case of negligence which warranted submission to the jury.
Applying the precepts of Dolson v. Anastasia, 55 N.J. 2, 5 (1969), we must conclude, upon the acceptance as true of all the evidence in support of plaintiffs' allegations and the benefit of all reasonable and legitimate inferences therefrom, that plaintiffs failed to present a sufficient case to support a judgment in their favor. Defendants' motion for dismissal as a matter of law should have been granted.
The Uniform Commercial Code, which is declaratory of preexisting New Jersey law on the subject, treats the responsibility of a collecting bank for the presentation of an item for collection in N.J.S.A. 12A:4-202. The bond anticipation notes involved herein are within the broad definition of an "item" as "any instrument for the payment of money." N.J.S.A. 12A:4-104-(1) (g).
Section 4:202(1) provides:
A collecting bank must use ordinary care in (a) presenting an item or sending it for presentment. * * *
Section 4:202(3) provides:
Subject to subsection (1) (a), a bank is not liable for the insolvency, neglect, misconduct, mistake or default of another bank *414 or person or for loss or destruction of an item in transit or in the possession of others.
In light of the foregoing enactment, plaintiffs had the burden of establishing the standard of reasonable care applicable to a bank in sending an item for redemption, a violation of that standard and a causal connection between such violation and the claimed loss.
The record reveals that the only evidence addressed to these elements of the cause of action is that presented by the expert testimony of R. Wallace Troemner, a stockbroker. He testified that the "normal procedure" would be to send the bonds directly to the paying bank and that this is the fastest and safest means, whether it be by courier or registered insured mail. It is the "normal practice" because it accomplishes redemption as quickly as possible in order to obtain the cash for reinvestment without inordinate delay.
Although he referred to "normal" practice and procedure, he did not render an opinion as to an existing standard of conduct for a bank under the circumstances involved herein. Nor did he testify that the submission of the bonds to an intermediary broker for physical presentation to the paying agent constitutes a deviation from an established standard of conduct. In fact, on cross-examination he pointed out that his brokerage house handles purchases and sales of bonds for banks, and that such banks sometimes forward bonds for redemption to his firm which, in turn, sends them to the paying agent, while at other times banks send the bonds directly to the paying agent. And he as a broker would not refuse to handle as an accommodation the redemption on behalf of a customer, whether it be a bank or an individual investor.
On the foregoing status of the proofs, and without more, plaintiffs failed to present a prima facie basis for a finding of negligence  namely, a deviation from a standard of ordinary care applicable to the actions of a bank in connection with the redemption of bonds. There is no competent evidence *415 that the use of an intermediary broker located close to the Chemical Bank, the paying agent, in order to insure expeditious payment before the City of New York defaulted, represents conduct which violates an existing standard in the business.
And even if there had been evidence of a violation of a standard of conduct, plaintiffs' case is devoid of any evidence from which a jury could find a causal connection between such violation and the loss through the bankruptcy of the intermediary broker.
Both the judge and plaintiffs point to the pending financial difficulties of the City of New York as a relevant factor in questioning the propriety of the bank's use of the circuitous route of an intermediary broker. Since Chemical Bank, as agent for the city, paid the total amount due on the notes, we are unable to fathom how the financial status of New York had played any part in plaintiffs' loss, except that plaintiffs' fear of the precarious position of the city motivated the bank to obtain the assistance of a New York broker to accomplish the end sought by plaintiffs  namely, redemption on the due date.
The error in the judge's determination to submit the case to the jury lies mainly in the failure to recognize that the sole cause of plaintiffs' loss was the bankruptcy of the independent brokerage house and not the method of transmittal by the bank. In the absence of any factual basis that the bank had good reason to know or knew of the insolvency or pending insolvency of the broker, the collecting bank cannot be held liable for the fortuitous circumstance of the subsequent insolvency of a licensed broker. The submission to the broker under such circumstances is simply a condition which permitted the unfortunate loss; it is not a causative factor in producing it.
The immunity from liability of the collecting bank is affirmatively expressed in N.J.S.A. 12A:4-202(3) which states that a bank is not liable for the insolvency or default of another person in the absence of a violation of ordinary care. *416 This is declaratory of New Jersey's acceptance of the so-called "Massachusetts Rule" which does not impose liability upon a collecting bank for the loss occasioned by the default of the intermediary. See New Jersey Study Comment to N.J.S.A. 12A:4-201 and 202; 10 Am. Jur.2d, Banks, § 728 at 695 and § 731 at 698; 6 Michie on Banks and Banking, § 57 at 132-134 (1975).
In view of the foregoing it is manifest that the trial judge erred in denying the motion for involuntary dismissal at the end of plaintiffs' case. Although denominated as a motion for dismissal, it was equivalent to a motion for judgment under R. 4:40-1. And since defendants produced evidence subsequent to denial of the motion, we must judge the sufficiency of plaintiffs' case on the basis of all the evidence produced at trial. See Castro v. Helmsley Spear, Inc., 150 N.J. Super. 160, 164 (App. Div. 1977). We are satisfied that there is no additional evidence presented on the defense which cures the deficiency of plaintiffs' case so as to permit submission of the issues to the jury.
Whether defendants moved for a dismissal or judgment at the end of plaintiffs' case or moved for judgment at the end of the entire case, the procedural method does not affect the ultimate result, namely, that the court erred in submitting the case to the jury. That error created the injustice which we are called upon to correct. And as long as the prerequisite motion was made at trial seeking judgment as a matter of law for defendants, they are entitled to relief from the trial court by a post-trial order and from this Appellate Court. See Logan v. North Brunswick Tp., 129 N.J. Super. 105, 108-109 (App. Div.), certif. den. 66 N.J. 328 (1974); Menza v. Diamond Jim's, Inc., 145 N.J. Super. 40, 44 (App. Div. 1976); Pressler, Current New Jersey Court Rules, Comment to R. 4:40-2 at 735.
We therefore reverse the judgment below and remand for the entry of judgment in favor of defendants-appellants.