NATIONAL STATE BANK

v.

FEDERAL RESERVE BANK OF NEW
YORK; Community Guardian Bank;
Uniport Company, Inc.; Sang B. Lee

Federal Reserve Bank of New
York, Appellant.

No. 92–5189.

United States Court of Appeals,
Third Circuit.

Argued Sept. 22, 1992.

Decided Nov. 24, 1992.

Thomas C. Baxter, Jr. (argued), New
York City, Robert B. Silverman, Silverman
& Rozier, Lakewood, N.J., for appellant.

Mark E. Herrera, Scott C. Pyfer (argued), Patterson & Weir, Westmont, N.J.,
for appellee.

Present: MANSMANN and ROTH,
Circuit Judges and RESTANI, Court of
International Trade Judge [1].

RESTANI, Judge.

Defendant-appellant, the Federal Reserve Bank of New York ("the N.Y.Fed"),
appeals from the district court's grant of
summary judgment in favor of plaintiff-appellee National State Bank ("NSB").
The district court held that defendant
N.Y.Fed breached its duty of ordinary care
in presenting two checks for payment and

---

**1.** Honorable Jane A. Restani, Judge, United
States Court of International Trade, sitting by
designation.

in failing to notify NSB within a reasonable time that the checks had been lost. Because we find that NSB did not meet its initial burden of demonstrating the absence of a genuine issue of fact in its motion for summary judgment, we reverse the district court's order and remand for trial.

## I.

This case involves apportionment of liability resulting from an alleged check kiting scheme. A brief overview of check kiting and the United States check collection system is therefore appropriate. A check kiter is a person who first draws a check on a fictitious account or on an account with insufficient funds to cover the amount of the check. The bank in which the account is supposedly located is the payor bank. The kiter then deposits the check in an account in a second bank, the depositary bank. The depositary bank does not learn that the check cannot be covered by funds in the account in the payor bank until after the kiter, or the kiter's accomplice, has withdrawn the money from the depositary bank. *See Northpark Nat'l Bank v. Bankers Trust Co.*, 572 F.Supp. 524, 526 (S.D.N.Y.1983).

In order to understand why the depositary bank may not learn that the check has been dishonored until after the funds have been withdrawn, we must take a look at the check collection system in the United States. This system depends in large part on our Federal Reserve banks. The regional banks of the Federal Reserve System, as collecting banks, receive checks from depositary banks and physically transmit these checks to the payor banks. The N.Y.Fed, for example, collects and processes nearly eight million checks daily. While checks are in transit, the collecting banks extend provisional credit to the depositary banks and make provisional debits to the accounts of the payor banks. *See Greater Buffalo Press, Inc. v. Federal Reserve Bank of N.Y.*, 866 F.2d 38, 39–40 (2d Cir. 1989) (overview of the check collection process). If, when a payor bank physically receives a check, there are insufficient funds in the account on which it is drawn

to cover it, the payor bank will notify the depositary bank that the check has been dishonored. This usually will occur within a matter of a day or two. However, if the transaction has proceeded normally and there are funds in the payor bank to cover the check, the payor bank will not generally advise the depositary bank that final payment has been made on a particular check.

It is on the occasions when there is a delay in transmitting a check or in giving notice of its dishonor that a check kiter may create an opportunity to withdraw funds from an account in the depositary bank even though there are insufficient funds in the account in the payor bank. Under our banking system, the payor and depositary banks maintain reserves in the collecting bank in their respective regions. The provisional debits and credits are made by the collecting bank against those reserves. Unless the depositary bank is notified that a check has been lost or dishonored, the depositary bank will assume within a short period of time that the provisional credit is final. By creating a situation in which there will be a delay in notification, the check kiter may succeed in withdrawing funds from the depositary bank before that bank learns of the scam.

In this case, Mr. Sang Lee, the President of Uniport Co., was allegedly involved in a check kiting scheme. Mr. Lee had accounts with plaintiff NSB and with Community Guardian Bank ("CGB"), not a party to this action. On or about November 27, 1989, Mr. Lee deposited at NSB two checks in the amount of $35,800. These checks were drawn on Mr. Lee's account at CGB.

NSB sent the checks to the N.Y.Fed which then took two provisional actions, crediting NSB with the deposit and debiting CGB. Approximately three months later, on March 9, 1990, the N.Y.Fed informed NSB that CGB had never received the checks. There is no evidence in the record to suggest that the N.Y.Fed's delay in notifying NSB of the loss of the checks was caused by the check kiting scheme. At the time of oral argument, the parties

still had no knowledge as to what happened to those two checks. Sometime after the loss was discovered, the N.Y.Fed reversed both the provisional credit to NSB and the provisional debit to CGB.

Unfortunately, by the time the N.Y.Fed reversed the provisional credit to NSB, NSB was no longer able to cover the loss of this credit from the funds in Mr. Lee's NSB account. This is so because during the three month delay between the time the checks were sent and NSB received the notice that they had been lost, NSB and CGB had concluded that Mr. Lee was attempting to defraud them. On February 20, 1990, NSB closed Mr. Lee's account and sent the remaining funds in it to CGB, where Mr. Lee's account was overdrawn. In return, CGB agreed to hold NSB harmless for any liability arising out of the payment of these funds to CGB.

In the fall of 1990, CGB declared bankruptcy and closed its doors. For this reason, NSB could no longer turn to CGB to cover its loss on the Lee account. NSB was able to recover only $3,000 from Mr. Lee personally. Therefore, NSB sued the only remaining source of recovery, the N.Y.Fed, for $32,800, the balance of its loss. On March 4, 1992, the district court granted summary judgment in favor of NSB. In an unpublished opinion, the trial judge stated,

> the Court finds that Federal Reserve [of N.Y.] breached its duty of ordinary care in the presentment of the two checks. The Court further finds, as a matter of law, that a delay of more than three months in notifying plaintiff that the checks were lost in transit was an unreasonable length of time.

*Nat'l State Bank v. Fed. Reserve Bank of N.Y.,* Civ. No. 91–3777, at 9 (D.N.J. Mar. 4, 1992) ("Memorandum & Order"), Joint Appendix ("Joint App.") at 115. The N.Y.Fed appeals.

## II.

In this case, federal jurisdiction is based on 12 U.S.C. § 632, which provides, "all suits ... to which any Federal reserve bank shall be a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 632 (1988). Thus, the district court had federal question jurisdiction under 28 U.S.C. § 1331 (1988), and appellate jurisdiction is proper under 28 U.S.C. § 1291 (1988).

The standard of review for a grant of summary judgment is plenary. *Resolution Trust Corp. v. Gill,* 960 F.2d 336, 340 (3d Cir.1992). On review, this court will apply the same test used by the district court, namely, whether the movant has met its initial burden of showing the absence of a genuine issue of material fact. The evidence must be viewed in the light most favorable to the non-moving party. *O'Donnell v. United States,* 891 F.2d 1079, 1081–82 (3d Cir.1989). Once the initial burden has been met, the moving party will prevail only if the evidence would support a directed verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## III.

The issue of whether plaintiff NSB satisfied its initial burden on summary judgment presents two questions. First, did the district court correctly decide that the N.Y.Fed breached its duty of ordinary care in presenting the checks? Second, did the district court correctly find that a three month delay between collection of the checks and notification of loss was unreasonable as a matter of law?

On a summary judgment motion, the movant must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the movant satisfies this initial burden, then the non-movant must respond with information to the contrary or it will lose. Fed.R.Civ.P. 56(e).

To prove that no genuine factual issues exist, a movant must present a factual scenario without any "unexplained gaps." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *accord O'Donnell,* 891 F.2d at 1082. Where the movant is the

defendant, or the party without the burden on the underlying claim, the movant has no obligation to produce evidence negating its opponent's case. The moving party merely has to point to the lack of any evidence supporting the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

Where the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent. The Third Circuit has stated that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Gill*, 960 F.2d at 340.[2]

In the case before us now, the party bringing the summary judgment motion is the plaintiff NSB, who bears the burden of proof at trial.[3] To determine whether NSB should have prevailed on its summary judgment motion, we must consider whether NSB satisfied its initial burden of production. If it did not, the sufficiency of the N.Y.Fed's response is not an issue.

### IV.

### A.

We first turn to the question of whether NSB has established the N.Y.Fed's duty of care in presenting the two checks. The applicable statute, New Jersey's version of the Uniform Commercial Code ("U.C.C."), provides that "[a] collecting bank must use ordinary care in ... presenting an item." N.J.Stat.Ann. § 12A:4–202(1)(a). NSB argues that the N.Y.Fed, as a collecting bank, breached its duty of ordinary care by losing the checks before it had the opportunity to present them to the paying bank.

Ordinary care, in the sense used by the U.C.C., "is not intended to refer to a standard of care unique to the banking world." *U.S. Fidelity & Guaranty Co. v. Federal Reserve Bank of N.Y.*, 590 F.Supp. 486, 491 (S.D.N.Y.1984). Nevertheless, sound banking practice will be considered when a court examines the surrounding facts and circumstances of alleged negligence. *Id.* at 499.

The principal piece of evidence upon which NSB relies to establish the N.Y.Fed's breach of ordinary care is the affidavit of Carole N. Marshall, an assistant vice president of NSB. The affidavit states only, "it is my belief that the Federal Reserve [of New York] lost the original Checks, having failed to deliver the Checks to Community Guardian Bank [CGB] for collection." Joint App. at 62. Ms. Marshall does not explicitly rely either on her expertise as a banker or on the standards of the banking industry in reaching that conclusion.

The affidavit also lacks any supporting factual evidence for Ms. Marshall's conjecture that the N.Y.Fed lost the checks. The documents which she cites show only that CGB never received the original checks (although it later received photocopied duplicates). Joint App. at 62, 70–71. NSB's brief states that the N.Y.Fed might have

---

**2.** *See also Anchorage Assocs. v. Virgin Islands Bd. of Tax Review,* 922 F.2d 168, 175 (3d Cir. 1990) (where movant has burden of proof and non-movant does not respond at all, court must still find that movant is entitled to prevail as matter of law). Justice Brennan's dissent in *Celotex* recommended that where the movant bears the burden of persuasion at trial, the movant must produce enough evidence to justify a directed verdict in its favor in order to meet its initial burden. 477 U.S. at 331, 106 S.Ct. at 2556 (Brennan, J., dissenting); *see also* William W. Schwarzer et al., *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441, 477 (1991).

**3.** NSB argues that the N.Y.Fed bears the burden of establishing that it presented the checks to CGB "seasonably." Appellee's Brief at 12–13. NSB relies on the somewhat ambiguous statutory provision that "[a] collecting bank taking proper action before its midnight deadline ... acts seasonably; taking proper action within a reasonably longer time may be seasonable but the bank has the burden of so establishing." N.J.Stat.Ann. § 12A:4–202(2) (West 1991). The New Jersey courts, however, have held that the plaintiff bears the burden of proof under § 12A:4–202. *Hoke v. Pioneer State Bank,* 167 N.J.Super. 410, 400 A.2d 1217, 1219 (Ct.App.Div. 1979).

lost the checks or it might have presented them to CGB later than it should have. Appellee's Brief at 12. Equally plausible is the N.Y.Fed's contention that CGB lost the checks. Joint App. at 86, 91. It is also possible that the mail carrier lost them.

These significant factual disputes bear directly on the issue of whether the N.Y.Fed breached its duty of ordinary care in presenting the checks to CGB. There is no evidence in the record as to who lost the checks—the N.Y.Fed, CGB, or the mail carrier. If there is no evidence that the N.Y.Fed lost the checks, then it cannot be held liable for breach of the duty of presentment.[4]

Therefore, the district court's statement that "[w]hat happened to the checks after Federal Reserve [of N.Y.] received them is ... irrelevant" is incorrect. *Memorandum & Order* at 8. Summary judgment against the N.Y.Fed for breaching its duty of ordinary care in presenting the checks is improper.

### B.

Summary judgment was also granted on the ground that "as a matter of law, ... a delay of more than three months in notifying plaintiff that the checks were lost in transit was an unreasonable length of time." *Memorandum & Order* at 9. The district court apparently measured the delay from when NSB sent the checks to the N.Y.Fed to when NSB received notification of loss.[5]

The statute, in contrast, requires the delay to be measured from when the collecting bank, in this case the N.Y.Fed, first learned of the loss.[6] The record contains no indication of when the N.Y.Fed learned of CGB's failure to receive the checks. The N.Y.Fed's notification form says only

that the checks have "been reported not received." Joint App. at 69. Plaintiff NSB admitted at oral argument that it neglected to request this information in discovery.

The time that the N.Y.Fed learned of the loss is a material fact. With no evidence on this point in the record, NSB can hardly claim that there are no genuine issues of material fact. NSB failed to meet its initial burden, and therefore the N.Y.Fed had no obligation to respond. Under the law of this circuit, when the movant who bears the burden of proof at trial does not establish the absence of a genuine factual issue, summary judgment is inappropriate even when the non-movant submits no evidence at all. *Gill*, 960 F.2d at 340. Even if NSB did not bear the burden of proof at trial, there is still an "unexplained gap" in its version of events which requires a denial of summary judgment. *Adickes*, 398 U.S. at 158, 90 S.Ct. at 1609.[7]

### V.

Summary judgment below was granted on two grounds: 1) that the N.Y.Fed breached its duty of ordinary care in presenting the checks and 2) that the N.Y.Fed breached its duty of timely notification of the checks' loss. Summary judgment was improper because the NSB failed to produce sufficient evidence to meet its initial burden on either ground.

Because we hold that the district court's order of summary judgment should be reversed, we do not reach the issue of whether the district court should have allowed the N.Y.Fed further discovery before requiring it to respond to the motion for summary judgment.

---

4. "[A] bank is not liable ... for loss or destruction of an item in transit or in the possession of others." N.J.Stat.Ann. § 12A:4–202(3).

5. Mr. Lee deposited the checks at NSB on November 27, 1989 and NSB received notification on March 9, 1990. *Memorandum & Order* at 2.

6. "A collecting bank must use ordinary care in ... notifying [a check's] transferor of any loss or delay in transit within a reasonable time

after discovery thereof." N.J.Stat.Ann. § 12A:4–202(1)(e).

7. The fact that the N.Y.Fed is more likely to know when it learned of the loss makes no difference because NSB could easily have requested the information during discovery. The New York Fed has no obligation to prove its opponent's case. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.