**GENERAL TEAMSTERS LOCAL NO. 326, a/w International Brotherhood of Teamsters, AFL–CIO, Plaintiff,**

v.

**M & G CONVOY, INC., Defendant.**

Civ. A. No. 93–287–JJF.

United States District Court, D. Delaware.

March 30, 1994.

Perry F. Goldlust, Heiman Aber & Goldlust, Wilmington, DE, Hugh J. Beins, Beins Axelrod Osborne Mooney & Green, Washington, DC, for plaintiff.

Richard G. Elliott, Jr., and Daniel J. DeFranceschi, Richards Layton & Finger, Wil-

mington, DE, Robert L. Mercado, Dean & Fulkerson, Troy, MI, for defendant.

### MEMORANDUM OPINION

FARNAN, District Judge.

Plaintiff General Teamsters Local Union No. 326 (the "Union") has filed suit requesting that the Court vacate an arbitration award pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1988). Presently before the Court are cross motions for summary judgment. Docket Items ("D.I.") 9, 12.

For the following reasons, the Court will deny plaintiff's motion for summary judgment and grant defendant's cross motion for summary judgment.

### I. FACTUAL BACKGROUND

Defendant M & G Convoy, Inc. ("M & G") is a trucking company engaged in the delivery of automobiles. D.I. 11 Exhibit ("Ex.") 5 at 176. At its facility in New Castle, Delaware, M & G unloads automobiles from railcars and reloads them onto tractor trailers for delivery to dealerships. *Id.* at 58. M & G employs truck drivers who own and operate their own tractor trailers. These owner-operators lease their trucks to M & G pursuant to written lease agreements. *Id.* at 59–62.

The lease agreements at the New Castle, Delaware facility provide compensation to the owner-operators based on a percentage of the transportation revenue realized from delivering automobiles to M & G customers. *Id.* at 194. As part of the compensation calculation, M & G deducted a toll schedule, based on a weighted average of actual tolls in the states in which the driver delivered automobiles, from each owner-operator's share of the transportation revenue and reimbursed him or her for any actual tolls incurred. *Id.* at 73, 188, 194–95.

The Union is the exclusive bargaining representative of the owner-operators at M & G's New Castle, Delaware facility. *Id.* at 101. M & G and the Union are parties to a multi-employer, multi-union Collective Bargaining Agreement (the "Agreement") with a mandatory grievance and arbitration procedure. D.I. 14 at B9–20. The provision governing this mandatory procedure provides that:

> Unless otherwise expressly provided in the Agreement, any and all disputes, including interpretations of contract provisions arising under, out of, in connection with, or in relation to this collective bargaining agreement, shall be subject to the grievance procedure of this Agreement.

*Id.* at B19. The grievance procedure uses binding arbitration, with arbitration committees composed of an equal number of employer and union representatives. *Id.* at B12–16. If an arbitration committee is unable to resolve a dispute, the Agreement calls for the dispute to be submitted to a three person board of arbitration, composed of one representative from each party and a third neutral member who serves as chairperson. *Id.* at B16–17.

Under the Agreement, the board of arbitration has the authority

> to interpret and apply the provisions of this Agreement or Supplements thereto, where appropriate, but shall not have the authority to amend or modify this Agreement or Supplements thereto, or establish new terms and conditions under this Agreement or Supplements thereto.

*Id.* at B18. As with arbitration committees, decisions of the board of arbitration are binding on the parties. *Id.*

### II. PROCEDURAL HISTORY

#### A. The Union's Grievance and the Arbitration Decisions

The Union filed a grievance on October 1, 1991, alleging that M & G had violated Article 49 of the Agreement by deducting toll schedules prior to calculating the owner-operators' 65% compensation. According to the Union, the toll schedules are part of the 65% gross revenue to which the owner-operators are entitled under the Agreement. Article 49, in relevant part, provides:

> (a) For the purpose of protecting the established drivers' rates and established conditions, minimum rental rates for the leasing of equipment owned by employee

shall be determined by negotiations between the parties, in each locality, for the equipment used in that locality. At no time will the rental be less than the following:

Tractors only—65% of gross revenue. Tractors, trailers, and/or semi-trailers—75% of gross revenue or as otherwise provided for in Local Riders ...

*Id.* at B22.

With regard to actual tolls, Article 49's provision for minimum rental rates provides that "[w]hen the Employer collects in tariff for highway toll tax, owner-operators shall be dispatched over same and shall be reimbursed for same upon producing bona fide receipt." *Id.* at B24. This provision for guaranteed reimbursement, however, is limited by subsequent language in Article 49 which states:

The Employer or operating company hereby agrees to pay: road ton mile, axle, or mile tax; when routed by the Employer—turnpike fees, road tolls and bridge tolls ...

*Id.* at B25.

Finally, Article 49 provides that "[n]o equipment lease between the Employer and the owner-operator shall in any way conflict with the terms and conditions of this Agreement." *Id.* at B29.

After M & G denied the Union's grievance, the Union submitted its grievance to the Eastern Conference Automobile Transporters Joint Committee in December of 1991. D.I. 11 Ex. 5 at 250 (Union Exhibit 3). The Eastern Conference Joint Committee deadlocked and the Union submitted its grievance to the National Automobile Transporters Joint Arbitration Committee. *Id.* (Union Exhibit 4). The National Committee referred the grievance to a subcommittee, which failed to resolve the dispute. Subsequently, in November of 1992, the National Committee decided:

[T]he Company was improperly handling the tolls. However, the two subcommittee members disagree as to the proper formula that should be used to resolve the proper method of handling the tolls. Therefore, the Committee is deadlocked as to

the proper formula to handle the tolls under the Eastern Conference Area Agreement.

*Id.* (Union Exhibit 5).

Because of the National Committee's deadlock and pursuant to Article 7 of the Agreement, a three person Board of Arbitration (the "Board") heard the Union's grievance. Before the Board, the Union argued that the toll schedule, which M & G deducted from the owner-operator's percentage of revenue, must be included as part of the gross revenue before calculating the driver's 65% share. According to the Union, the owner-operators are entitled to 65% of the toll schedule for any particular trip, as well as full reimbursement of actual tolls under Article 6 of the Agreement.

The Board ruled that the National Committee previously had determined that M & G's practice with regard to the toll schedules violated Article 49. Next, the Board rejected the Union's requests for 18% interest, a cease and desist order and the right to strike. D.I. 11 Ex. 2 at 5. Finally, the Board observed that the remedial question presented to it was composed of a retroactive component and a prospective component. With respect to the retroactive component, the Board awarded the owner-operators 65% of the toll schedules requested by the Union, but reduced this award by 65% of the actual tolls for which they had been reimbursed. *Id.* at 6–7. In reaching this conclusion, the Board observed that

it must be held in mind that the deduction was a known part of the executed lease agreements. And, because toll monies consist of both the assumed tolls embedded in the Toll Schedule and toll charges actually incurred, we do not think that it can legitimately be assumed that the lease agreements would have called for a 100% reimbursement of the toll charges actually incurred had it been known that the deduction could not be made by proper application of the Agreement and that the deduction, for that reason, would subsequently be overruled.

*Id.* at 6.

With regard to the prospective component of its remedy, the Board ruled that it would

be more appropriate for the parties to negotiate new terms to the lease agreements than for the Board to prescribe new or modified terms. *Id.* at 8.

## B. The Present Action

On June 14, 1993, the Union filed a complaint requesting that the Court: (1) vacate the remedy portion of the Board of Arbitration's award, and order M & G to pay the owner-operators 65% of the gross revenue, including the toll schedules, as well as reimbursing 100% of the actual tolls; or, in the alternative, (2) vacate the remedy portion of the award and remand to another Board of Arbitration. D.I. 1. In its answer, filed on July 1, 1993, M & G generally denied the allegations of the complaint and requested that the Court award M & G costs and attorney's fees. D.I. 4.

The parties have now filed cross motions for summary judgment. In support of its motion for summary judgment, the Union argues that: (1) the Board's remedy is contrary to the express provisions of the Agreement; (2) the Board wrongfully relied upon the lease agreements, which are not part of the Agreement, in formulating its remedy; (3) the Board wrongfully based its award on its own sense of industrial justice; and (4) the award is incomplete because it failed to include a prospective remedy. D.I. 10. In support of its cross motion for summary judgment, M & G argues that: (1) the Board's award draws its essence from the Agreement; (2) reliance upon extrinsic matters does not render the award invalid; (3) the award is not based on the Board's own notion of industrial justice; and (4) even if the award is incomplete or requires clarification, remand must be to the original Board of Arbitration. D.I. 13.

## III. APPLICABLE LAW

### A. Summary Judgment

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Rule 56 requires courts to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are those which, under applicable law, might affect the outcome of the case. *Id.*

A party moving for summary judgment bears the burden of demonstrating the absence of material issues of fact, regardless of which party has the burden of persuasion. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.) (in banc) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). If the nonmoving party bears the burden of persuasion at trial, "the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." *Id.* To oppose successfully the motion for summary judgment, the nonmoving party must go beyond the pleadings by introducing affidavits and other evidence which will create a genuine issue of material fact. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party bears the burden of persuasion, however, "the standard is more stringent." *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir.1992). Under this more stringent standard, if the moving party does not establish the absence of a genuine issue of material fact, the court must deny the motion for summary judgment, even without opposing evidentiary materials. *Id.*

In deciding a motion for summary judgment, "[i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In short,

the court presumes that the nonmoving party's version of any disputed issue of material fact is correct. *Eastman Kodak Co. v. Image Technical Servs., Inc.,* ── U.S. ──, ──, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992). In drawing these inferences, however, the court does not weigh evidence or make credibility determinations. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* ── U.S. ──, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

## B. *Standard of Review for a Labor Arbitration Award*

■ Courts exercise very limited review of an arbitration award issued pursuant to a collective bargaining agreement. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36–38, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987). A court must enforce an arbitrator's award if it "draws its essence from the collective bargaining agreement." *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers,* 896 F.2d 745, 747 (3d Cir.1990) (citing *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). The Third Circuit Court of Appeals has held that a court may vacate an arbitrator's award only "if there is no support in the record for its determination or if it reflects a 'manifest disregard of the [collective bargaining] agreement, totally unsupported by principles of contract construction....'" *Exxon Shipping Co. v. Exxon Seamen's Union,* 993 F.2d 357, 360 (3d Cir.1993) (quoting *News Am. Publications, Inc. v. Newark Typographical Union, Local 103,* 918 F.2d 21, 24 (3d Cir.1990)); *see United Indus. Workers v. Government of Virgin Islands,* 987 F.2d 162, 170 (3d Cir.1993) (court may not vacate an award merely because it views the merits differently or because it finds that the award was based on an error of law). This judicial deference to an arbitrator's award extends to the remedy awarded. *See United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361 (an arbitrator "is to bring his [or her] informed judgment to bear in order to reach a fair resolution of a problem. This is especially true when it comes to formulating remedies.").

## IV. *DISCUSSION*

In light of the limited scope of judicial review of labor arbitration awards and the standard for summary judgment, the Court concludes there is no genuine issue of material fact. Accordingly, the Court will deny the Union's motion for summary judgment and grant M & G's cross motion for summary judgment.

■ The Union contends the Board's remedy fails to draw its essence from the Agreement. In support of its contention, the Union advances several arguments. First, the Union argues Article 7 of the Agreement expressly limits the Board's authority, prohibiting it from amending or modifying the Agreement or supplements thereto. Specifically, the Union asserts that "[t]he Contract mandated that the drivers receive 65% of gross revenues and the Arbitrator found that the Toll Schedules were a part of gross revenues. But.... the Arbitrator created a formula with no basis in the Contract." D.I. 10 at 10–11.

■ Article 7, however, empowers the Board "to interpret and apply the provisions of this Agreement ..." D.I. 14 at B18. Article 49 of the Agreement makes repeated reference to the lessor-lessee relationship and lease agreements which exist between owner-operators and the employer, including a command that the lease agreements not conflict with the terms and conditions of the Agreement. *See* D.I. 14 at B21–29. These multiple references to lease agreements indicate that Article 49 of the Agreement was not to be interpreted in a vacuum. Further, a court may refuse to enforce an arbitrator's interpretation of a contract only "when the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *United Paperworkers v. Misco,* 484 U.S. at 43, 108 S.Ct. at 373. Because the Board's award did not violate public policy and draws its essence from the Agreement, the Union's first argument must be rejected.

Secondly, and closely related to the Union's first argument, the Union asserts the Board wrongfully considered the lease agreements in formulating its remedy. The Union cites case law from other circuits for the proposition that an arbitrator may not rely "on some agreement other than the provision applicable to the dispute at hand ..." D.I. 10 at 12. The United States Supreme Court, however, has indicated that a

> labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Among the practices of the industry and the shop under the Agreement are the leases between owner-operators and M & G. This fact is evident from Article 49's multiple references to these leases. The Court, therefore, is satisfied that the Board did not exceed its authority by considering the lease agreements in formulating its remedy for the violation of Article 49.

Thirdly, the Union argues that the Board wrongfully based its remedy on its own sense of industrial justice. This argument merely recasts the Union's previous two arguments that the Board's decision does not draw its essence from the Agreement. Because the Board's remedy directly related to the provisions in Article 49 of the Agreement, the Court finds the Union's argument is without merit.

Finally, the Union asserts the Board's award is incomplete because it did not include a prospective remedy. The Third Circuit Court of Appeals has ruled that "[w]here the award constitutes only a partial resolution of the issues, remand is appropriate ..." *Teamsters Union Local No. 115 v. DeSoto, Inc.*, 725 F.2d 931, 940 (3d Cir.1984). In response to the Union's assertion, M & G contends the Board's award is a complete remedy because it contains a prospective remedy in the form of an order to negotiate.

In its decision, the Board stated:

> Our approach to the prospective component of the remedial action lies in the recognition that the terms of lease agreements are the product of separate local negotiations (subject to the limitation that the terms must be consistent with the Agreement commands). It follows, we believe, that it is not for us to undertake prescriptions for new or modified lease agreements. The parties are free to adopt the retroactive application we are directing as the sound way for proceeding prospectively under the existing lease agreements. Alternatively, it may be useful for them to go with that application as the interim arrangement pending completion of the renegotiation of the lease agreements. If there are to be revised lease-agreement terms, however, their formulation is the parties' obligation.

D.I. 11 Ex. 2 at 8. The Board's ruling appears consistent with Section 4 of Article 49, which provides that minimum rental rates "shall be determined by negotiations between the parties ..." D.I. 14 at B22.

The Union contends, however, that: (1) the Board's decision does not specifically direct anyone to renegotiate the lease agreements; (2) the Union is not a party to the lease agreements; and (3) it is error to order negotiations as a remedy. These contentions are without merit.

First, the Board's decision, while perhaps not as precise as it could be, can fairly be read as requiring the parties to negotiate a settlement of their differences with respect to the owner-operators' future compensation. Secondly, whether the Union itself is a party to the lease agreements is not determinative because the Union is the exclusive representative of the owner-operators "for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment ..." 29 U.S.C. § 159(a). In short, no other party could have brought the grievance. Further, the lease agreements, which affect the owner-operators' rate of pay and conditions of employment, may only be renegotiated by the owner-operators' designated representative, the Union. Finally, it is not error to order negotiations as part of the remedy

where the collective bargaining agreement itself contemplates negotiations. Section 49 states that minimum rental rates "shall be determined by negotiations between the parties ..." D.I. 14 at B22. The Board's remedy, therefore, draws its essence from the collective bargaining agreement.

Contrary to the Union's contentions, the retroactive and prospective elements of the Board's remedy draw their essence from the Agreement and are based upon an arguable interpretation of Article 49. The Court, therefore, will deny the Union's motion for summary judgment and grant M & G's cross motion for summary judgment.

Finally, in both its answer and brief in support of its motion for summary judgment, M & G requests the Court award it costs and attorney's fees. D.I. 4, 13. Although district courts exercise very limited review of labor arbitration awards, the Court finds that M & G has failed to demonstrate that the Union did not have a "reasonable chance to prevail." This is especially true in regard to its appeal of the prospective remedy portion of the arbitrator's decision. *Chauffeurs, Teamsters and Helpers, Local Union No. 765 v. Stroehmann Bros. Co.,* 625 F.2d 1092, 1094 (3d Cir.1980) (quoting *United Bd. of Carpenters v. American Superior Midwest, Inc.,* 86 L.R.R.M. 2682, 2685 (BNA) (W.D.Ark.1974)). Accordingly, the Court will deny M & G's request for costs and attorney's fees.

## V. CONCLUSION

In sum, the Court holds the award of the Board of Arbitration draws its essence from the collective bargaining agreement and should not be disturbed. Accordingly, plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted. The Court will also deny defendant's request for costs and attorney's fees.

An appropriate Order will be issued.