**In re Edward J. FRANCE, Debtor.**

**State Farm Mutual Automobile Insurance Company, Plaintiff,**

v.

**Edward J. France, Defendant.**

**Bankruptcy No. 02–30806–MBM.
Adversary No. 02–2743–MBM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 8, 2003.

Thomas J. Lyons, Pittsburgh, PA, for debtor.

Jennifer M. Swistak, Deer & Associates, Pittsburgh, PA, for plaintiff.

James A. Prostko, Pittsburgh, PA, trustee.

### MEMORANDUM AND ORDER OF COURT

M. BRUCE McCULLOUGH, Bankruptcy Judge.

**AND NOW,** this **8th day** of **October, 2003,** upon consideration of (a) the adversary complaint of State Farm Mutual Automobile Insurance Company (hereafter "State Farm"), wherein State Farm seeks a determination that its claim for $41,547.26 against the above-captioned debtor (hereafter "the Debtor"), which claim has been liquidated and reduced to a consent judgment dated June 26, 1998, in the Pennsylvania Court of Common Pleas, Beaver County (hereafter "the Consent Judgment"), is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as one for money obtained by fraud or false representation, (b) State Farm's motion for summary judgment with respect to its nondischargeability complaint, and (c) the other documents submitted by the parties relevant to the instant matter; and subsequent to notice and a hearing held on October 6, 2003, regarding State Farm's summary judgment motion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that (a) State Farm's summary judgment motion is **GRANTED,** and State Farm's claim is determined to be **NONDISCHARGE-ABLE,** but only to the extent of $30,863.88 plus accrued interest that pertains to such amount, and (b) State Farm's summary judgment motion is **DENIED,** and State Farm's claim is **DISCHARGED,** to the extent of $10,683.38 plus any accrued interest that pertains to such amount. The

rationale for the Court's decision is set forth in some detail below.

### I.

The amount of the $41,547.26 judgment in favor of State Farm the entry of which was consented to by the Debtor in 1998 represents the total amount of insurance benefit payments that State Farm made to the Debtor in response to a written "Application For Benefits" (hereafter "the Application") which the Debtor filed with State Farm in 1996. The $41,547.26 figure is comprised of (a) $10,000 which was paid for medical expenses that the Debtor incurred to treat injuries that he sustained as part of an auto accident, which accident precipitated the Debtor's aforementioned filing of the Application (hereafter "the Accident"), and (b) $31,547.26 in lost wages benefits that were paid out to the Debtor as a result of information that he supplied in the Application. By virtue of the Consent Judgment, which judgment references a stipulation entered into between the parties, the Debtor agreed, *inter alia,* that he was not entitled to the $31,547.26 in insurance benefit payments for lost wages, and that such payments were procured through a fraud that the Debtor had perpetrated upon State Farm. *See* Ex. 3 to Pl's. Summ. J. Mot.—the Consent Judgment ¶ 5 & Ex. A thereto, pp. 3 & 4 ¶ 7. State Farm concedes that the Debtor has made $900.00 worth of payments to date towards the Consent Judgment of $41,547.26, but the Debtor acknowledges that, by virtue of the terms of the stipulation that was referenced in the Consent Judgment, interest accrues at a rate of 6% annually, which fact necessarily means that the $41,547.26 amount has actually grown since it was first agreed upon by the parties in 1998.

In the Application, in response to a question therein which clearly asks an applicant to provide information regarding employers for which an applicant has worked during the year prior to an accident that precipitates the filing of such application, the Debtor represents that he worked for two different employers, *see* Ex. 1 to Pl's. Summ. J. Mot.—the Application at line 16, neither of which, the Debtor now concedes, he had actually worked for in the year leading up to the Accident. In fact, and as the Debtor now concedes, he had not worked anywhere for approximately two years prior to the Accident. Nevertheless, the Debtor represented in the Application as well that he lost two weeks of time from work, and that his average weekly earnings equalled $480.00. *See* Ex. 1 to Pl's. Summ. J. Mot.—the Application at line 13. In response to a request by State Farm to verify his employment status with one of the employers that he listed in the Application, the Debtor elicited a letter from Mark Machi, a representative of Laborers' District Council of Western Pennsylvania, that was sent on the Debtor's behalf directly to State Farm (hereafter "the Machi Letter"). The Machi Letter indicates, in the first sentence therein, that it was sent "to verify employment for Edward J. France"—i.e., the Debtor. *See* Ex. 2 to Pl's. Summ. J. Mot.—the Machi Letter.

### II.

In order to except a debt from discharge under § 523(a)(2)(A) as one for money obtained by fraud or false representation, a creditor must preponderantly establish that:

(a) the debtor made the representation in question;

(b) at the time of the representation, the debtor knew it to be false;

(c) the debtor made the representation with the intent and purpose of deceiving the creditor;

(d) the creditor justifiably relied on the representation and the reliance was justifiably founded; and

(e) the creditor sustained a loss or damage as the proximate consequence of the representation having been made.

*See* 4 *Collier on Bankruptcy,* ¶¶ 523.04 at 523–19 to 20 (regarding burden and standard of proof for actions under § 523(a)), 523.08[1][d] at 523–43 to 44 (reliance must be justifiable rather than reasonable), 523.08[1][e] at 523–45 to 46 (elements for fraud or false representation) (Bender 2003).

The standard for obtaining the entry of a summary judgment in the Third Circuit is succinctly explained as follows:

> On a summary judgment motion, the movant must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Once the movant satisfies this initial burden, then the nonmovant must respond with information to the contrary or it will lose. Fed. R.Civ.P. 56(e).

*National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1581 (3rd Cir.1992). Factual issues are " 'genuine' only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hankins v. Temple University,* 829 F.2d 437, 440 (3rd Cir.1987). Therefore,

> a nonmoving party ... cannot withstand a summary judgment motion on the basis that a genuine factual dispute exists if the evidence on the record is such that a reasonable jury could only return a verdict in favor of the movant with respect to such fact.

*In re Foxmeyer Corporation,* 286 B.R. 546, 556 (Bankr.D.Del.2002).

## III.

■ As an initial matter, the Court holds—and at the summary judgment stage no less—that the $10,000 medical expenses portion of State Farm's consent judgment claim cannot be excepted from the Debtor's discharge via § 523(a)(2)(A) on the basis that such $10,000 was obtained by fraud or false representation because State Farm does not even allege that the Debtor fabricated the Accident or the medical expenses that he incurred as a result thereof. Accordingly, $10,000 of State Farm's $41,547.26 claim must be discharged by way of the Debtor's Chapter 7 discharge.

The Court also holds at this time that $683.38 of the $900.00 that State Farm concedes has already been paid towards its $41,547.26 claim pertains to the $31,547.26 portion of such claim that the Court, for the reasons set forth below, holds to be nondischargeable pursuant to § 523(a)(2)(A)—i.e., $900.00 \times (31,547.26/41,547.26) = 683.38$. Accordingly, only $30,863.88—i.e., 31,547.26—683.38—of State Farm's $41,547.26 claim can be, and is, held to be nondischargeable pursuant to § 523(a)(2)(A) as one for money obtained by fraud or false representation. Therefore, $10,683.38 of State Farm's claim, in total, must be discharged by virtue of the Debtor's Chapter 7 discharge—i.e., 10,000 + 683.38.

■ As for the Court's holding that $30,863.88 of State Farm's consent judgment claim is nondischargeable pursuant to § 523(a)(2)(A), which amount represents the unsatisfied lost wages portion of such claim, the Court rules as it does, and at the summary judgment stage, (a) not on the basis that the Consent Judgment has collateral estoppel effect with respect to the issue of fraud vis-a-vis such unsatisfied lost wages, and notwithstanding the par-

ties' stipulation referenced in the Consent Judgment as to the presence of the Debtor's fraud with respect to payments for such lost wages, because a consent judgment gained in a Pennsylvania state court cannot be accorded collateral estoppel effect with respect to the issue of fraud in a subsequent nondischargeability proceeding under § 523(a)(2) before a bankruptcy court, *see Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980) (citing 28 U.S.C. § 1738 as support for the holding that "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so"); *Lebeau v. Lebeau,* 258 Pa.Super. 519, 393 A.2d 480, 483–84 (1978) (requirement for collateral estoppel to apply that issue actually have been litigated is not met in Pennsylvania if issue is the subject of a stipulation between the parties), but rather (b) because the parties do not *genuinely* dispute that all of the requisite elements for State Farm's nondischargeability cause of action against the Debtor under § 523(a)(2)(A) are present with respect to such unsatisfied lost wage payments.

The Court concludes that such a genuine dispute is lacking notwithstanding the Debtor's contention that by filling out the Application as he did, he (a) did not thereby intend to represent that he actually worked for the two employers that he listed as having worked for in the year preceding the Accident, but (b) instead really only intended to represent to State Farm that he could have worked for such employers had he not been injured. The Court must disregard or reject the contention of the Debtor as just recounted in the preceding sentence, and accordingly determine that the aforesaid genuine dispute is lacking, because the record evidence in the instant matter is such that a reasonable jury could not find as the Debtor contends,

that is that he intended on the Application only to represent that he could have worked for the two employers that he listed therein as actually having worked for. The Court concludes that a reasonable jury could not find as the Debtor contends because (a) the question in the Application that elicits employer information of an applicant is undeniably clear, and the same cannot in any way be construed so as to elicit information regarding employers for which an applicant did not work in the year preceding an accident that precipitates the filing of the Application, (b) the Application as filled out by the Debtor, in any event, leaves an unmistakable impression upon one who would read the same that the Debtor actually worked for the two aforesaid employers, which unmistakable impression one could only (i) conclude that the Debtor appreciated when he filled out the Application, and (ii) expect that the Debtor would have sought to correct if the same was unintended but which impression the Debtor did not correct, (c) the Machi Letter, particularly when read in conjunction with the Application as the same was filled out by the Debtor, also leaves an unmistakable impression upon its reader that is similar, if not identical, in nature to the impression created by the Application itself, and (d) the Debtor's rationale as to why he felt the need to supply information regarding employers for which he had not, but perhaps could have, worked, to wit that he labored under the impression that he was entitled to benefits for lost wages merely because he could have worked even if he had not worked for two years prior to the Accident, is not only obviously misplaced but is frankly absurd to the point that one could not reasonably find that the Debtor believed as much— indeed, in order to find that the Debtor, who apparently served at one point in his life as a state court magistrate as well as a

legislative analyst for the Pennsylvania Senate, *see* Ex. 7 to Pl's. Summ. J. Mot.— France Dep. Tr., at pp. 61–63, labored under such an impression, one would also have to find that the Debtor believed as well that essentially anyone would be entitled to benefits for lost wages after an accident regardless of his or her circumstances, which latter finding is simply not a reasonable one. Because the Court concludes that a reasonable jury could not find that the Debtor intended on the Application only to represent that he could have worked for the two employers that he listed therein as actually having worked for, the Court concludes, in turn, that a reasonable jury could only find that he intended to represent to State Farm that he, in fact, had worked for such employers during the year prior to the Accident.

In light of the foregoing, the Court concludes that a reasonably jury could only find that the Debtor (a) represented that he actually worked for the two employers that he listed in the Application as having worked for in the year preceding the Accident, (b) knew, when he made such representation, that the same was false, and (c) made such representation with the intent and purpose of deceiving State Farm into believing that such representation was true. The Court also concludes that a reasonable jury could only find that State Farm actually relied, and justifiably if not reasonably so relied, upon the Debtor's representation that he actually worked for the two employers that he listed in the Application as having worked for in the year preceding the Accident. The Court draws the preceding conclusion because (a) State Farm indisputably paid out lost wages benefits to the Debtor in response to the information supplied by the Debtor in the Application, thereby leaving no doubt that State Farm actually relied upon—i.e., sustained loss or damage as a proximate consequence of—the Debtor's

representation that he had actually worked for the two employers in question, (b) State Farm, as set forth above, indisputably sought and obtained verification regarding such representation in the form of the Machi Letter, which letter, as set forth above, a reasonable jury could only find is consistent with the Debtor's representation in the Application that he had actually worked for the two employers in question during the year prior to the Accident, and (c) a reasonable jury, the Court concludes in turn, could only find that such act of verification by State Farm constitutes justification for State Farm's indisputable reliance upon such representation by the Debtor.

In light of the holdings set forth in the preceding paragraph herein, the Court is constrained to hold that (a) the parties do not *genuinely* dispute that all of the requisite elements for State Farm's nondischargeability cause of action against the Debtor under § 523(a)(2)(A) are present with respect to the aforesaid unsatisfied lost wage payments, and (b) State Farm is accordingly entitled as a matter of law to the entry of a judgment to the effect that $30,863.88 of its consent judgment claim, which amount represents the unsatisfied lost wages portion of such claim, is nondischargeable pursuant to § 523(a)(2)(A). Because the Court is constrained to so hold, the Court shall grant State Farm's summary judgment motion to the extent of $30,863.88 and deny the same to the extent of $10,683.38.

### IV.

**IN SUMMARY,** (a) State Farm's summary judgment motion is **GRANTED,** and State Farm's claim is determined to be **NONDISCHARGEABLE,** but only to the extent of $30,863.88 plus accrued interest that pertains to such amount, and (b) State Farm's summary judgment motion is **DE-**

NIED, and State Farm's claim is **DIS-CHARGED**, to the extent of $10,683.38 plus any accrued interest that pertains to such amount.