**IN THE MATTER OF THE ARBITRATION BETWEEN UNITED IN-
DUSTRIAL WORKERS, SERVICE, TRANSPORTATION, PRO-
FESSIONAL GOVERNMENT OF NORTH AMERICA OF THE
SEAFARERS' INTERNATIONAL UNION OF NORTH AMERICA,
ATLANTIC, GULF, LAKES AND INLAND WATERS DISTRICT
AFL–CIO, (LOCAL #16) o/b/o DONALD M. BOUTON**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, V.I. DEPARTMENT
OF JUSTICE (Formerly Department of Law)
UNITED INDUSTRIAL WORKERS, SERVICE, TRANSPORTA-
TION, PROFESSIONAL AND GOVERNMENT OF NORTH AMER-
ICA OF THE SEAFARERS' INTERNATIONAL UNION OF NORTH
AMERICA, ATLANTIC GULF, LAKES AND INLAND WATERS
DISTRICT AFL-CIO (Local #16) o/b/o DONALD M. BOUTON,
(hereinafter referred to as "BOUTON"), Appellant**

[987 F.2d 162]

No. 92-7250

United States Court of Appeals

for the Third Circuit

Filed February 12, 1993

BRENDA J. HOLLAR (argued), Charlotte Amalie, St. Thomas, V.I., *for appellant*

ROSALIE SIMMONDS BALLENTINE, Attorney General, PAUL L. GIMENEZ (argued), Office of Attorney General of Virgin Islands, (Department of Justice), Charlotte Amalie, St. Thomas, V.I., *Counsel to Attorney General*, ALLEN POPPLETON, Office of Collective Bargaining, St. Thomas, V.I., *for appellee*

BEFORE: BECKER, COWEN AND ROTH, *Circuit Judges*

## OPINION OF THE COURT

Cowen, *Circuit Judge*

Donald Bouton, a government employee discharged for persistently violating the dress code, filed a complaint alleging that he was wrongfully terminated for failure to comply with an illegal directive. He appeals the arbitration decision that dismissed his complaint on the grounds that he was not covered by the applicable collective bargaining agreement ("CBA"). Although the CBA authorized a government agency to clarify the scope of the agreement's coverage, the arbitrator also possessed jurisdiction to resolve this dispute because Bouton agreed to submit the conflict to the arbitrator and impliedly waived his right to object to the arbitrator's authority. The record supported the arbitrator's decision that the CBA did not cover Bouton. Finally, the arbitrator's award was complete, and the arbitrator did not demonstrate any bias against Bouton. We therefore will affirm the district court's decision that affirmed the dismissal of the complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1978, the Virgin Islands Department of Law[1] hired Donald Bouton as an Assistant Attorney General and soon promoted him to First Assistant Attorney General. Approximately one year after his elevation, Bouton was appointed Attorney General and served in this capacity for several months until the legislature ultimately declined to confirm his appointment. In August of 1986, Bouton was appointed to the newly created position of Hearing Officer in the Paternity and Child Support Division. Hearing Officers, appointed by the Governor for four-year terms, conduct hearings and render binding decisions in paternity and child support cases.

Approximately a month after his appointment, Bouton wrote to the then Attorney General, Leroy Mercer, to propose terms for his acceptance of the position. He asked to be placed on a leave of absence, which would allow him to return to his position as an Assistant Attorney General if and when a vacancy occurred, after his term as a Hearing Officer expired. The Attorney General wrote "Agreed" on this letter, initialed the document and returned a

---

[1] The Department of Law subsequently has been renamed the Virgin Islands Department of Justice. See V.I. Code Ann. tit. 3, ch. 8, § 115 et. seq. (Supp. 1986).

signed copy to Bouton. Although he acquiesced to Bouton's conditions of acceptance, the Attorney General had no authority to bind either the Governor or future Attorneys General. Additionally, the Seafarers International Union ("Union") was the exclusive bargaining representative of the Assistant Attorneys General, and the Union's collective bargaining agreement with the government proscribed leaves of absence in excess of one year.

In January of 1987, Godfrey de Castro assumed the position of Attorney General. To improve the image of the Law Department, he immediately issued a directive requiring all male professional employees to wear a coat and tie at work.[2] Bouton refused to comply with the new dress code. Bouton's supervisor orally notified Bouton about the policy and told him that he must comply. Bouton subsequently received several written warnings informing him that disciplinary action would be taken if he continued to violate the dress code. Bouton persisted in his refusal to conform his attire to the directive.

Bouton filed a grievance pursuant to the CBA alleging that he refused to follow the dress code because (1) the office was hot and without air conditioning); (2) compliance would reduce his productivity; (3) the rule violated the collective bargaining agreement because the Union had not been consulted; and (4) the rule discriminated against men. The government explicitly reserved the issue of Bouton's membership in the Union and scheduled a hearing to address the grievance. At the hearing, Bouton did not introduce any evidence to support the reasons for his refusal to follow the newly instituted dress code. He did argue, however, that he was covered under the Union's collective bargaining agreement.

The recognition clause of the CBA explicitly included Assistant Attorneys General and excluded the Attorney General, First Assistant Attorney General and Chiefs of Divisions. The CBA did not mention Hearing Officers, but stated that the parties jointly will

---

[2] The directive, a memorandum to all staff dated February 2, 1987, stated in pertinent part:

> All male professional employees whose work does not by its nature require them to dress otherwise are required to wear ties and coats while on duty. This applies to *ALL* such professional employees. No one is exempted. It especially applies to attorneys, all attorneys, whether or not they go to court, or expect to go to court on any given day.

App. at 130 (emphasis in original).

petition the Public Employees Relation Board ("PERB") for a clarification concerning whether the bargaining unit includes attorneys employed by the executive branch, other than Assistant Attorneys General. To support his assertion that he was included under the CBA, Bouton presented evidence that the Union deducted dues from his salary while he was a Hearing Officer and never removed his name from its seniority list.

The grievance was denied on the ground that Hearing Officers were not covered under the CBA. The Attorney General, who presided at the hearing, concluded that even if the CBA covered Bouton, decisions regarding appropriate attire are reserved for management because the CBA does not address this subject. The Attorney General also found that requiring men to wear a coat and tie, traditional male business attire, was a reasonable exercise of managerial discretion.

Following the denial of his grievance, Bouton continued to disregard the directive and was fired for continued insubordination and conduct unbecoming an employee. Bouton filed an action in the Territorial Court seeking reinstatement. Both his complaint and his amended complaint requested that the court compel the government to submit the issue of his dismissal to binding arbitration. The Union, representing Bouton, sent a demand for arbitration to the Attorney General. At the time the demand for arbitration was made, neither the government nor the Union had filed a petition with PERB for clarification as to whether attorneys in the executive branch, other than Assistant Attorneys General, are covered by the CBA. The Government refused voluntarily to submit the propriety of Bouton's dismissal to arbitration because it contended that Bouton was not covered by the CBA. Nevertheless, on April 8, 1987, the Territorial Court referred the dispute to binding arbitration for resolution. The Union, which had requested the arbitration, obviously did not object to arbitrating the conflict.

On June 26, 1987, Bouton filed an unfair labor practice complaint against the government with PERB alleging that the dress code was unreasonable, discriminatory and violative of the CBA. The Union intervened on behalf of Bouton. In response, the government filed a motion for declaratory judgment asking PERB to announce that Bouton is not a member of the bargaining unit. The government also docketed its own action with PERB seeking a clarification that the Union's bargaining unit excludes attorneys employed by the

executive branch other than Assistant Attorneys General. The Government requested, and the Union agreed, that the PERB actions be stayed pending the disposition of the arbitration.

The parties agreed to bifurcate the arbitration and initially address the threshold question of whether the CBA covered Bouton. Because Hearing Officers were not sufficiently analogous to Assistant Attorneys General in responsibilities and terms of employment, the arbitrator found that Bouton was not covered by the CBA and dismissed Bouton's complaint. The arbitrator acknowledged that he had not heard all of the evidence with respect to the merits, but expressed his opinion in dicta that Bouton's firing was not arbitrary. The arbitrator based this conclusion on Bouton's own testimony and exhibits, which established that Bouton, after receiving numerous notices about the dress code policy, persistently violated it even after the denial of his grievance. The Union filed a petition in the district court seeking to vacate the dismissal of the complaint, which the district court denied. Bouton appeals this order of the district court.

## II. DISCUSSION

A. *Jurisdiction*

The Union argues that we should vacate the arbitrator's dismissal of its complaint because the arbitrator lacked jurisdiction to determine whether the CBA covered Bouton. The Union asserts that both Virgin Islands law and the CBA vest exclusive jurisdiction in PERB to decide the scope of coverage of the bargaining unit.

■ The Virgin Islands statute upon which the Union relies states that:

> Upon the request of a public employer, group of public employees, or labor organization, the *PERB shall determine* an appropriate bargaining unit of public employees by identifying the specific class or classes of employees or identifying positions the employees of which shall be members of a unit . . . .

V.I. Code Ann. tit. 24, § 370(a) (Supp. 1986) (emphasis added). The Union reasons that because the statutory language is mandatory—PERB *shall* determine—the legislature intended to grant PERB exclusive jurisdiction to determine the coverage of bargaining units. Because statutory interpretation poses a pure question of law, our review is plenary. United States v. Knox, 977 F.2d 815, 819 (3d Cir.

218

1992) (citing United States v. Brown, 862 F.2d 1033, 1036 (3d Cir. 1988)).

The statutory language belies the Union's contention. The statute simply states that if a party petitions PERB, PERB must decide the scope of coverage of the CBA at issue. An employer or employee must act affirmatively by filing a petition before PERB acquires a mandatory obligation to decide who is in the bargaining unit. If the parties fail to petition PERB for a clarification, the statute does not say that no other forum may address the scope of coverage of a CBA.

■ The Supreme Court repeatedly has held that when Congress enacts legislation that grants federal district courts jurisdiction over specific causes of action, federalism concerns dictate that state courts are not divested of jurisdiction over these claims unless the statute or its legislative history demonstrates a clear congressional intent to confer exclusive federal jurisdiction. See Tafflin v. Levitt, 493 U.S. 455, 459, 110 S. Ct. 792, 795 (1990); Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 507-08, 82 S. Ct. 519, 522-23 (1962); Claflin v. Houseman, 93 U.S. 130, 136-37 (1876). Because of this longstanding line of precedent, "[t]here is every reason to expect Congress to take great care in its use of explicit language when it wishes to confer exclusive jurisdiction." American Nat'l Red Cross v. S.G., — U.S. —, 112 S. Ct. 2465, 2473 (1992).

■ Although federalism principles are not implicated in this case, we nevertheless presume that the Virgin Islands legislature exercise great care when drafting its legislation. Clearly, the Virgin Islands legislature knows how to vest exclusive jurisdiction in a single tribunal. See, e.g., V.I. Code Ann. tit. 4, § 75(1) (Supp. 1986) ("The territorial court shall have original, exclusive jurisdiction . . . of all civil actions wherein the matter in controversy does not exceed the sum or value of $500. . . ."); V.I. Code Ann. tit. 9, § 62(c) (1982) ("Banking Board may file civil action in the District Court . . . for which purpose exclusive jurisdiction is hereby vested in the District Court"). The absence of any explicit language or legislative history indicating that PERB should have exclusive jurisdiction to clarify the scope of CBAs leads us to conclude that V.I. Code Ann. tit. 24, § 370(a) does not vest PERB with exclusive jurisdiction to determine these issues.

Having decided that PERB does not possess exclusive jurisdiction pursuant to statute, we now address whether the CBA prohib-

ited the arbitrator from deciding Bouton's claims. The CBA contained a broad arbitration clause, but then directed the parties jointly to petition PERB for a clarification concerning whether the bargaining unit included attorneys other than Assistant Attorneys General employed by the executive branch. The Union argues that this clause removes questions about the coverage of the bargaining unit from the realm of arbitrable issues.

 The question of arbitrability—whether the parties contracted to arbitrate a particular grievance—is undeniably a legal issue for judicial determination. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986). Unless the parties provide otherwise, a court, not an arbitrator, should resolve the jurisdictional issue of what forum should decide the merits of a claim. Id. If the parties submit the issue of arbitrability to the arbitrator, however, a court is obliged to give the arbitrator's decision regarding the arbitrability of a matter the same deference due an arbitrator's decision on the merits. GK MGT Inc. v. Local 274, Hotel Employees and Restaurant Employees Union, AFL-CIO, 930 F.2d 301, 304 (3d Cir. 1991) (citing Pennsylvania Power Co. v. Local Union #272 of Int'l Bhd. of Elec. Workers, AFL-CIO, 886 F.2d 46, 48 (3d Cir. 1989)). In this case, neither the government nor the Union disputed the authority of the arbitrator during the arbitration proceeding. Since the arbitrator did not render a decision concerning arbitrability, we are the first to address this issue.

██ ██ Arbitration between unions and employers is a matter of contract. Once the parties have mutually agreed to refer a matter to an arbitrator, they are bound by his decision and may not later challenge his authority to resolve the claim. Johnson v. United Food & Commercial Workers, Int'l Union Local No. 23, 828 F.2d 961, 965 (3d Cir. 1987). The parties, therefore, define the scope of the arbitrator's jurisdiction by agreement. An agreement to arbitrate often is contained in a collective bargaining agreement. An arbitration agreement, however, need not be express, but also may be inferred from the conduct of the parties. Teamsters Local Union No. 764 v. J.H. Merritt & Co., 770 F.2d 40, 42 (3d Cir. 1985). In J.H. Merritt, the employer voluntarily submitted a dispute to arbitration without objection and was represented at the arbitration hearing by two high ranking officials. We held that this conduct "manifest[ed] a

clear intent to arbitrate [the] dispute." Id. Therefore, the employer could not contest the arbitrator's authority on appeal and was bound by the arbitrator's decision. Id.

In this case, the Union demanded arbitration and sought a court order compelling the government to submit the dispute to binding arbitration. The court issued such an order and the Union, represented by counsel, participated fully in the arbitration. The Union never objected to the arbitrator's authority to decide the dispute and agreed to stay the pending PERB proceedings. The Union's conduct demonstrates its unmistakable intent to arbitrate its dispute with the government. See International Ass'n of Machinists and Aerospace Workers, Lodge No. 1777 v. Fansteel, Inc., 900 F.2d 1005, 1009 (7th Cir.) ("The party initiating arbitration has made a decision that the dispute is arbitrable. . . ."), cert. denied, — U.S. —, 111 S. Ct. 143 (1990). Since the Union agreed to arbitrate the dispute, the Union is bound by the arbitrator's decision to dismiss its claims.

An alternative formulation for our conclusion is waiver. Because Article III of the Constitution restricts the subject matter jurisdiction of the federal courts, the consent of the parties cannot confer subject matter jurisdiction on a federal court. California v. LaRue, 409 U.S. 109, 112 n.3, 93 S. Ct. 390, 394 n.3 (1972). Nor can a party ever waive its right to challenge the subject matter jurisdiction of a court. Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S. Ct. 2099, 2104 (1982); In re University Medical Center, 973 F.2d 1065, 1085 (3d Cir. 1992). In contrast, because arbitrators derive their authority from the contractual agreement of the parties, a party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration and failing to object on the grounds that there was no agreement to arbitrate. J.H. Merritt, 770 F.2d at 43; accord Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, 760 F.2d 173, 175 (7th Cir.) ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it."), cert. denied, 474 U.S. 845, 106 S. Ct. 136 (1985); George Day Constr. Co. v. United Bhd. of Carpenters and Joiners of America, Local 354, 722 F.2d 1471, 1475-76 (9th Cir. 1984) (failure to reserve the jurisdictional question waived employer's right to in-

dependent judicial examination· of the propriety of arbitration); Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1, 611 F.2d 580, 584 (5th Cir. 1980) ("by submitting an issue to arbitration, the employer had waived any objection to the arbitrator's jurisdiction"). If parties wish to have a legal question resolved by an arbitrator rather than a judge, they are free to submit their claim to arbitration.

 Because the Union participated in the arbitration hearing without voicing objection to the arbitrator's authority to decide the matter, the Union waived its right to challenge the arbitrator's jurisdiction. Allowing the Union, which initiated arbitration, to vacate the award on the grounds that it never agreed to arbitrate the dispute would give the Union two bites at the apple, arbitration and litigation, to obtain a favorable outcome. Such a system would frustrate the strong federal policy favoring the speedy resolution of labor disputes through arbitration.

B. *Issue Preclusion*

The Union argues that the arbitrator should not have decided whether Hearing Officers were included within the bargaining unit because Government of the Virgin Islands v. United Industrial Workers of North America, No. 82K-22793 (April 9, 1983) (Kennedy, Arb.) (grievance of Joseph Targia) (hereinafter "Targia"), a prior arbitration decision to which the government was a party, established that Hearing Officers are included under the CBA. This earlier arbitration award, the Union reasons, prevents the government from relitigating the coverage of Hearing Officers within the bargaining unit.

 Absent a collective bargaining agreement provision that requires arbitrators to be bound by earlier arbitration awards, the parties delegate to the arbitrator the power to decide the preclusive effect of prior arbitration awards. See W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of America, 461 U.S. 757, 765, 103 S. Ct. 2177, 2183 (1983). There is no requirement in this CBA that arbitrators be bound in any way by earlier awards. Therefore, an arbitrator may, in his discretion, apply collateral estoppel to an earlier arbitration award if (1) the identical issue was previously adjudicated; (2) the

issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. Gonce v. Veterans Administration, 872 F.2d 995, 997-98 (Fed. Cir.), cert. denied, 493 U.S. 890, 110 S. Ct. 234 (1989); see also Burke v. Latrobe Steel Co., 775 F.2d 88, 91 (3d Cir. 1985) (court precluded relitigation of issues in federal cause of action that were decided by arbitrator). But see Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de Puerto Rico, 583 F.2d 1184, 1187 (1st Cir. 1978) (an arbitration decision "does not stop either party from raising the same issue in a subsequent arbitration"). The arbitration system envisions that each dispute be resolved under the controlling contract without undue reliance on other arbitration awards presenting close factual circumstances. Although estoppel may be invoked when the identical facts have been considered by a competent arbitrator, estoppel is inappropriate in the absence of precise factual correspondence.

The arbitrator in this case properly declined to accord collateral estoppel effect to the Targia arbitration award because that decision did not resolve the identical issue presented in this case. The arbitrator in Targia interpreted an earlier version of the collective bargaining agreement between the government and the Union that contained different language in its recognition clause. The collective bargaining agreement at issue in Targia covered Assistant Attorneys General as well as "all other attorneys employed by and performing legal services for the Executive Branch of the Government of the Virgin Islands." Targia, slip op. at 3. In contrast, the CBA applicable to Bouton contained a much narrower recognition clause, which expressly covered only Assistant Attorneys General. Because significantly different language was interpreted in Targia, that arbitration award does not estop the government from litigating whether Hearing Officers are covered under the CBA in effect when Bouton was dismissed.[3]

C. *The Arbitrator's Award*

The scope of judicial review of an arbitration award is narrowly circumscribed. Because the arbitrator's construction of

---

[3] For the same reasons, Government of the Virgin Islands v. Isaacson, (March 26, 1992) (Brandschain, Arb.), another arbitration decision relied on by Bouton, also does not estop the government.

223

the collective bargaining agreement is bargained for, a court is not free to vacate an award because it views the merits differently. W.R. Grace, 461 U.S. at 764, 103 S. Ct. at 2182. Nor may a court overrule an arbitration decision because it finds an error of law. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S. Ct. 1358, 1362 (1960). The strong federal policy favoring private resolution of labor disputes, see United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37, 108 S. Ct. 364, 370 (1987), compels this high degree of deference. An arbitrator's award must be enforced so long as it "draws its essence from the collective bargaining agreement." Enterprise Wheel, 363 U.S. at 597, 80 S. Ct. at 1361.

██ Despite this limited role in reviewing arbitration awards, some circumstances justify vacating an arbitration award. A labor arbitration decision fails to draw its essence from the collective bargaining agreement if the arbitrator acted in manifest disregard of the law, or if the record before the arbitrator reveals no support whatsoever for the arbitrator's determination. Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of America, 896 F.2d 745, 748-49 (3d Cir. 1990).

The Union asserts that the arbitration award was completely unsupported by the record and in manifest disregard of the law. The arbitrator's decision cannot be so characterized. The CBA explicitly covered Assistant Attorneys General and excluded the Attorney General, First Assistant Attorney General and Chiefs of Divisions. Hearing Officers were not specifically covered or excluded because that position had not yet been created when the CBA was negotiated.[4] The CBA provides that the parties will jointly petition PERB for a clarification with respect to whether the bargaining unit includes attorneys other than Assistant Attorneys General employed by the executive branch. Obviously, the parties believed that the CBA was ambiguous regarding the extent to which it covers other executive branch attorneys. Because the Union waived its right to insist that PERB determine the coverage of the CBA, see discussion supra part II.A, the arbitrator was left to decide if Hearing Officers were encompassed within the bargaining unit.

---

[4] On appeal, the Union does not dispute the arbitrator's finding that Bouton accepted the position of Hearing Officer.

██ ██ The arbitrator found that a Hearing Officer was not sufficiently analogous to an Assistant Attorney General to be within the bargaining unit.[5] Hearing Officers have different duties from Assistant Attorneys General. Hearing Officers do not render advice or litigate cases like Assistant Attorneys General, but are quasi-judicial employees who conduct hearings and render binding orders. Additionally, the terms of employment of Hearing Officers and Assistant Attorneys General differ greatly. Hearing Officers are appointed by the Governor for four-year terms, serve no probationary period and enjoy a salary independent of their number of years experience (and higher than Assistant Attorneys General). In contrast, Assistant Attorneys General are hired for an indefinite period, serve a six-month probationary period, and receive salaries calculated pursuant to a formula based on years of experience. In light of the great deference afforded to arbitrators, the arbitrator's decision to exclude Hearing Officers from the bargaining unit was not without support from the record.[6]

██ The Union next asserts that the arbitrator's award is incomplete because it fails to address whether Bouton was on a leave of absence from his prior position as an Assistant Attorney General. A court can remand for further arbitration if an award is incomplete. United Steelworkers of America, District 36, Local 8249 v. Adbill Management Corp., 754 F.2d 138, 141 (3d Cir. 1985). In this case, no remand is necessary.

---

[5] The arbitrator properly ignored the evidence that Union dues were deducted from Bouton's salary while he was a Hearing Officer and that his name was never removed from the Union seniority list. Union membership is not probative of which employees are included in the bargaining unit. The recognition clause of the CBA defines the coverage of the bargaining unit. An employee cannot expand the scope of the bargaining unit by joining the Union. Additionally, it was apparent that the Union seniority list included names of people clearly excluded from the bargaining unit. The list contained the names of three Chiefs of Divisions, but Chiefs of Divisions specifically were excluded from the bargaining unit.

[6] Approximately two years after Bouton's dismissal, PERB ordered that the bargaining unit be "amended to include those persons now and hereafter employed as Attorneys by any executive agency or department of the Government of the Virgin Islands." App. at 166. It is disputed whether Bouton, a Hearing Officer, was employed as an attorney. We need not reach this question, however, because PERB's order does not apply retroactively and was issued significantly after Bouton's firing.

■ The arbitrator declined to reach whether Bouton was on leave because it was irrelevant. The Union's amended complaint alleges that Bouton was wrongfully fired for violating an illegally imposed directive and seeks Bouton's reinstatement as a Hearing Officer. The complaint does not allege any breach of contract based on the government's refusal to return him to his position as an Assistant Attorney General. Even if Bouton was on a leave of absence and his dismissal as a Hearing Officer made him eligible to return to his prior position, he was a Hearing Officer at the time of his discharge. Therefore, his available remedies for being fired as a Hearing Officer depend on whether that position was covered by the CBA at the time of his discharge, not on whether he was on a leave of absence from his Assistant Attorney General position. The arbitrator's failure to address whether Bouton was on a leave of absence was not error.

■ The Union finally argues that the arbitrator demonstrated bias by noting in his decision that Bouton's discharge was not arbitrary, even though the arbitrator had not heard all the evidence supporting Bouton's position because the initial hearing was limited to the threshold issue of whether Bouton was covered by the CBA. An arbitration award may be vacated when the arbitrator is biased against a party. See Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters, 969 F.2d 1436, 1446 (3d Cir.), cert. denied, 61 U.S.L.W. 3337 (U.S. Dec. 7, 1992); High Concrete Structures, Inc. of N.J. v. United Elec., Radio & Mach. Workers of America, Local 166, 879 F.2d 1215, 1218 (3d Cir. 1989). This court has vacated an award only when the arbitrator's comments and actions clearly demonstrate partiality. In Stroehmann Bakeries, we held that an arbitrator presiding over a sexual harassment dispute was biased against the alleged victim. 969 F.2d at 1446. The arbitrator characterized the obese victim as "unattractive and frustrated" and allowed the alleged harasser to ask, over objection, "Would you think an average man would make a pass at a woman like that?" Id. Additionally, the arbitrator inexplicably found that the harasser's concession that he made sexual comments about his wife's anatomy was acceptable business banter. This obvious demonstration of bias against the alleged victim warranted vacating the arbitrator's award and assigning a new arbitrator to preside at the second hearing. Id.

 In this matter, the arbitrator's dicta did not clearly demonstrate partiality. The arbitrator acknowledged that he had not heard the merits, but commented that based solely on Bouton's own testimony and exhibits, his firing did not seem to be arbitrary. He noted that Bouton received numerous notices about the dress code policy, but persistently violated it even after the denial of his grievance. Unlike Stroehmann Bakeries, the arbitrator did not malign the character of a party or make outrageous findings. The arbitrator should have limited his discussion to the coverage of the CBA, but his gratuitous remarks about the merits do not indicate any bias against Bouton.

## III. CONCLUSION

In sum, the arbitrator possessed jurisdiction to resolve this dispute because the Union, by demanding arbitration, submitting its claim to arbitration without objection, and agreeing to stay the PERB proceeding, impliedly consented to arbitrate the dispute and waived its right to object to the arbitrator's authority. Because the CBA was ambiguous about the inclusion of Hearing Officers within the bargaining unit, the arbitrator's decision that the agreement did not cover Bouton had support from the record. Finally, the arbitrator's award was complete and he did not show any bias against Bouton by including unnecessary dicta concerning the merits of the dispute. We will affirm the district court's order that affirmed the dismissal of the Union's complaint.