**AMERICAN LIFE INSURANCE COMPANY, Plaintiff/Respondent,**

v.

**Carlos D. PARRA, ASIAT, S.A. and the Parkway Corporation, Defendants/Petitioners.**

No. CIV.A.98–401–KAJ.

United States District Court, D. Delaware.

July 2, 2003.

Stephen E. Jenkins, Esquire; Regina A. Iorii, Esquire; and Joseph C. Handlon, Esquire; Ashby & Geddes; Wilmington Delaware; counsel for American Life Insurance Company. Of Counsel: Michael T. Sullivan, Esquire; and Marc A. Lebowitz, Esquire; Sullivan & Worcester, LLP; New York, New York.

Mark Minuiti, Esquire; and Saul Ewing LLP; Wilmington, Delaware; counsel for Carlos D. Parra; ASSIAT, S.A.; and The Parkway Corporation. Of Counsel:Hector Torres, Esquire; Harold G. Levinson, Es-

quire; and Cindy Caranella Kelly, Esquire; Kasowitz, Benson, Torres & Friedman; New York, New York.

### MEMORANDUM OPINION

JORDAN, District Judge.

## I. INTRODUCTION

Petitioners and defendants Carlos D. Parra ("Parra"), an Argentine citizen, and ASIAT, S.A. ("ASIAT"), a Uruguayan corporation, (collectively "Parra") move the Court to modify or vacate in part and then confirm an arbitration award arising from a contractual dispute with respondent and plaintiff American Life Insurance Company ("ALICO"), a Delaware corporation. (Docket Item "D.I." 252.) ALICO opposes the motion and cross-moves to vacate the arbitration award or, alternatively, to modify it to effectuate an Order of the Court dated February 25, 2002. (D.I.256.) Defendant The Parkway Corporation was not a party to the arbitration award giving rise to the motions currently before the Court.

The arbitration award at issue is dated May 24, 2002. (D.I. 245, Torres Aff., Ex. C at 17.) It is governed by the Inter-American Convention on International Commercial Arbitration (known popularly as the "Panama Convention"), *opened for signature* Jan. 30, 1975, 104 Stat. 448, 14 I.L.M. 336, as implemented by Chapter 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 301–307, since "a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the … [Panama Convention] and are member States of the Organization of American States...." 9 U.S.C.A. § 305(1); *see* Panama Convention, *supra,* 104 Stat. 448, 14 I.L.M. 336 (the United States, Argentina, and Uruguay have ratified or acceded to the Panama Convention); 33 I.L.M. 981, 982 (1984) (stating that the United States, Argentina, and Uruguay are member States of the Organization of American States). The ar-

bitration proceedings took place in New York, New York, and were conducted pursuant to the rules and procedures of the Inter–American Commercial Arbitration Commission ("IACAC"). (D.I. 245, Torres Aff., Ex. C at 1); *see also* Panama Convention, art. 3, *reprinted in* 9 U.S.C.A § 301; 9 U.S.C.A. §§ 303(b), 306. Further, the parties' arbitration agreements provide that "any dispute arising between the parties in connection therewith shall be governed exclusively by the law of the State of Delaware, United States of America." (D.I. 254, Torres Aff., Ex. A at ¶ 18; *id.,* Ex. B at ¶ 18.) The agreements also provide that a decision by the "arbitrators … shall be final and binding on the parties." (*Id.,* Ex. A at ¶ 19; *id.,* Ex. B at ¶ 19.)

The motions before the Court raise the issues of whether and to what extent a United States court may vacate, modify, or confirm an arbitration award rendered in the United States, if that arbitration award is governed by the Panama Convention.

The Court has jurisdiction to answer those questions pursuant to 28 U.S.C. § 1331. *See* 9 U.S.C.A. §§ 202, 203, 207, 301, 302; *see also, e.g., Productos Mercantiles E. Industriales, S.A. v. Faberge USA, Inc.,* 23 F.3d 41, 44–45 (2d Cir.1994) (holding that the FAA gives federal courts subject matter jurisdiction to modify and confirm an arbitration award rendered under the Panama Convention). Venue is also proper in this district. 9 U.S.C.A. §§ 204, 301, 302; *see also Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,* 529 U.S. 193, 204, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000) (holding that the venue provisions of the FAA are permissive, permitting a motion to vacate, modify, or confirm an arbitration award in any district proper under the general venue statute, 28 U.S.C. § 1391).

For the reasons that follow, the arbitration award will be confirmed.

## II. BACKGROUND

Parra entered agency agreements with ALICO in connection with the sale of ALICO life insurance policies. (D.I. 253 at 4–5.) Eventually, the relationship with ALICO soured, and, in July of 1996, Parra initiated arbitration proceedings against ALICO. (D.I. 253 at 1.) ALICO countered by filing a declaratory judgment action in this Court, asserting that an October 1, 1994 General Release ("General Release") executed by the parties precluded Parra from asserting certain claims at arbitration. (D.I. 248 at 2.)

On November 16, 1998, the Court entered a preliminary injunction enjoining Parra from arbitrating issues relating to the General Release. (*Id.* at 3.) The arbitrators then halted arbitration, pending resolution of ALICO's declaratory judgment action. (*Id.*) A jury, trial followed in January of 1999 and, on January 15, 1999, the jury unanimously found that ALICO had obtained the General Release through fraud and duress. (*Id.*) The Court then, in addressing a renewed motion by ALICO for judgment as a matter of law, on October 14, 1999, held that:

> (1) the evidence presented at trial was sufficient to support the jury's verdict that Parra was fraudulently induced to enter into the General Release and that the court would have reached the same result as the jury using its independent judgment; (2) the evidence presented at trial was insufficient to support the jury's verdict that Parra signed the General Release under duress; and (3) that a new trial would not be granted.

(*Id.* at 3–4.) (citations and footnotes omitted). Afterward, the Court vacated its preliminary injunction and permitted the arbitration to proceed. (*Id.* at 4.)

On November 11, 1999, ALICO moved the Court to reinstate the preliminary injunction enjoining arbitration, arguing that arbitration should be stayed until Parra returned the consideration ALICO had paid it for executing the General Release, a sum of $127,292.30, plus interest. (*Id.*) The Court denied the motion, stating that it would "defer to the arbitrators to resolve the remaining disputes between the parties. The court retains jurisdiction over ALICO's claim that Parra should return the $127,292.30 that ALICO paid as consideration for the release, in the event the arbitrators do not decide this issue." (D.I. 205 at 1, ¶ 2.)

ALICO appealed the Court's denial along with several other Orders of the Court to the United States Court of Appeals for the Third Circuit. (D.I. 248 at 5.) ALICO also moved again in this Court to reinstate the preliminary injunction enjoining arbitration, arguing that "it would be irreparably harmed if the arbitration proceeding were allowed to proceed during the pendency of its appeal." (*Id.*) The Court denied the motion. (*Id.*) On May 23, 2000, ALICO then asked the Third Circuit to enjoin the arbitration. (*Id.*) The Third Circuit also denied ALICO's request. (*Id.* at 5.) On July 6, 2001 the Third Circuit then affirmed in part, reversed in part, and remanded this Court's October 14, 1999 Order. (*Id.*) Specifically, the Third Circuit affirmed the Court's denial of ALICO's motion for judgment as a matter of law on fraudulent inducement, denied ALICO's motion for a new trial but, remanded the case, holding that this Court erred when it found the General Release void instead of merely voidable. (*Id.* at 6.)

Arbitration proceedings concluded, thereafter, on November 7, 2000. (*Id.*) The arbitration panel, however, did not reach a decision, instead, opting to wait to rule until after this Court had the opportunity to address the Third Circuit's remand of this Court's October 14, 1999 Order. (*Id.*) On February 25, 2002, this Court resolved the issue, holding that:

1) The November 17, 1998 injunction is vacated on the condition that Parra abandon the claim in the arbitration that the release was procured by fraud;

2) Parra may seek recovery with respect to all remaining claims in the arbitration;

3) As ALICO is entitled to the return of the $127,292.30 that was paid to Parra in exchange for the release, plus interest, ALICO shall be entitled to this amount as a set-off in the arbitration;

4) In the event that the amount owed to ALICO exceeds the amount awarded to Parra in the arbitration, this court retains jurisdiction over ALICO's claim that Parra should return the $127,292.30 that ALICO paid as consideration for the release and ALICO may seek to recover that amount before this court.

(D.I. 249 at 1–2.) The Third Circuit affirmed the decision on November 21, 2002. (D.I.273.)

On May 24, 2002, the arbitration panel rendered its decision, awarding Parra compensatory damages in the amount of $3,750,000 and "post-judgment interest, at the Delaware statutory rate compounded weekly to commence on June 24, 2002." (D.I. 254, Torres Aff., Ex. C.) The panel did not grant Parra prejudgment interest. (*Id.*) The panel also did not order Parra to return the $127,292.30 ALICO paid it as consideration for executing the General Release. (*Id.*) The parties' present motions in this case followed. (D.I.252, 256.)

## III. DISCUSSION

### A. *The Parties' Arguments*

On June 4, 2002, Parra moved the Court to modify or vacate in part and then confirm the arbitration award at issue (D.I. 252), arguing that the arbitrators' failure to include prejudgment interest in the arbitration award was in manifest disregard of Delaware law (D.I. 253 at 10–20). ALICO answered Parra's motion on June 18,

2002 (D.I.256), arguing that an award of prejudgment interest at arbitration is controlled by Federal law and is discretionary (D.I. 257 at 8–34.) Moreover, contends ALICO, even if the issue is controlled by Delaware law, prejudgment interest at arbitration is discretionary under Delaware law. (*Id.*) Therefore, maintains ALICO, the arbitrators' decision was not rendered in manifest disregard of Federal or Delaware law. (*Id.*)

On June 18, 2002, ALICO also cross-moved to vacate the arbitration award. (D.I.256.) Specifically, ALICO requests vacatur for "evident partiality" on the theory that one of the arbitrators, Donald J. Zoeller, was biased due to his having formerly been a law partner with one of Parra's attorneys. (D.I. 257 at 19–30.) ALICO asserts further that, if the arbitration award is not vacated, it should be modified in accordance with this Court's February 25, 2002 Order (D.I.249) so that ALICO receives a return of release consideration, with interest, paid to Parra for executing the General Release. (D.I. 257 at 33.) Moreover, contends ALICO, the arbitration award should be modified to strike the grant of post-judgment interest because the panel had no authority to grant such an award. (*Id.* at 33–34.)

Parra contests ALICO's assertions. (D.I.263.) As to Mr. Zoeller, Parra argues that ALICO's assertions of "evident partiality" are meritless under the law, and were already denied by the arbitration panel. (*Id.* at 3–26.) Parra argues further that ALICO is not entitled to a return of the release consideration it paid Parra for executing the General Release. Instead, Parra asserts that the issue remains outstanding, requiring the Court to decide whether ALICO is entitled to the money. (*Id.* at 26–36.) Parra also argues that the arbitration panel properly awarded it post-judgment interest. (*Id.* at 36–38.)

### B. *The Panama Convention and Its Implementing Legislation*

The Panama Convention, which concerns international arbitration, became effective in the United States on October 27, 1990. Panama Convention, Pub.L. No. 101–369, 104 Stat. 448 (1990). It has thirteen articles and sixteen signatory States including the United States, Argentina, and Uruguay. Panama Convention, Jan. 30, 1975, OAS SER A20 (SEPEF), 14 I.L.M. 336. As a treaty ratified by the United States, the Panama Convention is controlling law, U.S. CONST. art. VI, cl. 2, and it has been implemented in the United States by Chapter 3 of the FAA, 9 U.S.C.A. § 301. *See Whitney v. Robertson*, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888) ("When ... [treaties] are not self-executing, they can only be enforced pursuant to the legislation ... carry[ing] them into effect....").

■ Arbitration awards covered by the Panama Convention may be rendered in any signatory State. *See* 9 U.S.C.A. § 304 ("Arbitral decisions or awards made in the territory of a foreign State shall ... be recognized and enforced under this chapter only if that State has ratified or acceded to the ... [Panama Convention].") Article 4 of the Panama Convention provides that such awards "shall have the force of a final judicial judgment." Panama Convention, art. 4, *reprinted in* 9 U.S.C.A. § 301. Nevertheless, when recognition or execution of the award is sought in the United States it must be confirmed by court order to acquire the status of a "final judicial judgment." *Cf. Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984) ("[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."). The Panama Convention itself, however, provides no mechanism for confirming arbitration awards. Pursuant to Chapter 3 of the FAA, therefore, confirmation is governed by Section 207 of the FAA. 9 U.S.C.A. §§ 207, 301, 302.

Section 207 provides that confirmation is mandatory "unless ... [a court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the ... [Panama] Convention." 9 U.S.C.A. § 207. Article 5 of the Panama Convention specifies several grounds for refusing to recognize or enforce arbitration awards, *see* Panama Convention, art. 5, *reprinted in* 9 U.S.C.A. § 301, none of which are argued by the parties in the instant case. Instead, the parties argue their motions in terms of vacatur or modification. The Panama Convention, however, does not discuss vacating or modifying arbitration awards. At least one ground for refusing to recognize or enforce arbitration awards under Article 5, though, may be construed to implicitly authorize a United States court to vacate or modify an arbitration award rendered in this country. To the extent that the parties' arguments invoke this provision of the Panama Convention, the Court addresses it.

■ Article 5(1)(e) provides that an arbitration award may be refused recognition or execution if it "has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made." *Id.* art. 5(e)(1). In the United States, where the decision of the panel presently at issue was made, the law which could provide the basis for annulment or suspension is the implementing legislation of the Panama Convention, namely Chapter 3 of the FAA. Chapter 3 of the FAA in turn incorporates other FAA sections in the implementation of the Panama Convention,[1] including Sec-

---

1. Chapter 3 of the FAA renders applicable sections from Chapters 1 and 2 of the FAA to arbitration awards under the Panama Convention. 9 U.S.C.A. §§ 301, 302, 307. Indeed, Chapter 3 invokes all of the sections of

tions 10 and 11. Those sections specify grounds for vacating or modifying arbitration awards. 9 U.S.C.A. §§ 10, 11. It appears, then, that the power to annul or suspend an arbitration award contained in Article 5(1)(e) of the Panama Convention implies, through the implementing provisions of the FAA, a grant of power for a court in this country to vacate or modify an arbitration award rendered in this country upon the grounds specified in Sections 10 and 11 of the FAA. *Cf. Productos Mercantiles*, 23 F.3d 41, 45–46 (holding that the FAA gives a court the power to modify an arbitration award rendered under the Panama Convention).

The next question is, assuming that the Court has the power to modify or vacate the award, whether it should exercise that power in this case. The answer is no. The common law ground for vacatur or modification pressed by the parties is not explicit in the Panama Convention nor is it explicitly incorporated or otherwise rendered applicable through the implementing provisions of the FAA.[2] Confirmation, thus, appears mandatory under Section 207 in the circumstances of this case. *Cf. Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2d Cir.1997) (holding that the FAA's implied grounds of vacatur are in conflict with an analogous treaty and implementing legislation scheme when the arbitration award was rendered in the United States).

## C. Application of the Panama Convention and Its Implementing Legislation to the Issues Before the Court

### 1. Parra's Motion

■■■ Parra's only argument for vacatur or modification of the arbitration award at issue is that the arbitrators showed a "manifest disregard of the law." "Manifest disregard of the law" is a nonstatutory or common law ground for vacating arbitration awards. *Cf. Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir.2003) ("A district court may also vacate an arbitrator's decision where the arbitrator's decision 'evidence[s] a manifest disregard for the law rather than an erroneous interpretation of the law.'") (quoting *Local 863 Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 534 (3d Cir.1985)). It is not a basis for vacating arbitration awards under the Panama Convention or for refusing to recognize or execute arbitration awards under the Panama Convention, even if those awards were rendered in the United States. Therefore, the Court denies Parra's request for vacatur or modification on the ground of "manifest disregard of the law."

■■■ However, even if the Court had concluded that "manifest disregard of the law" was a basis for vacatur or for refusing to recognize or execute the arbitration award under the Panama Convention, Parra's "manifest disregard of the law" argu-

Chapter 1 to the extent those sections are consistent with the Panama Convention and Chapter 3, and expressly incorporates several sections from Chapter 2. *Id.*

**2.** Decisions under Section 10 of the FAA have, outside the context of the Panama Convention, recognized a common law "manifest disregard for the law" basis for the vacatur or modification of arbitration awards. However, there is no such language specifically set

forth in Section 10, and, under another international convention analogous to the Panama Convention, no such basis has been allowed. *See M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 851 (6th Cir.1996)(holding that the court lacked jurisdiction to refuse recognition of an arbitration award rendered under an analogous treaty when the award was attacked as being in manifest disregard for the law).

ment is not persuasive. Parra asserts that under Delaware law prejudgment interest is mandatory and should have been included in the arbitration award. ALICO contests that assertion, arguing that the issue is governed by Federal law or, alternatively, that it is discretionary under Delaware law. Even if the doctrine of "manifest disregard of the law" applied in this case, the arbitration award would withstand scrutiny. As the Third Circuit stated in *Dluhos*, to vacate an arbitration award for "manifest disregard of the law" the arbitration award must evidence more than a mere " 'erroneous interpretation of the law.' " 321 F.3d at 370 (quoting *Local 863 Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 773 F.2d at 534). Thus, vacating or refusing to recognize or execute the arbitration award would be proper only "if the record before the arbitrator reveals no support whatsoever for the arbitrator's determination...." *United Indus. Workers v. Gov't of the Virgin Is.*, 987 F.2d 162, 170 (3d Cir.1993) (quoting *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 748–49 (3d Cir.1990)). In contrast, as ALICO has pointed out, credible arguments can be made that, under both Federal and Delaware law, prejudgment interest is not mandatory in all circumstances and the arbitrators could have viewed themselves, and apparently did view themselves, as free to exercise discretion in that regard.

### 2. *ALICO's Cross–Motion*

ALICO makes three arguments in its cross-motion: (1) the arbitration award should be vacated for "evident partiality" because Mr. Zoeller was a member of the arbitration panel, (2) the arbitration award should be modified because the arbitration panel awarded post-judgment interest, and (3) the arbitration award should be modified to effect a return of the release consideration, plus interest, ALICO paid Par-

ra for executing the General Release. The Court addresses each of these contentions in turn.

As detailed earlier, it appears that a court may vacate or modify an arbitration award under the Panama Convention pursuant to Section 10 or 11 of the FAA. 9 U.S.C.A. §§ 10, 11, 301, 307. Section 10(a)(2) of the FAA provides that an arbitration award may be vacated "[w]here there was evident partiality or corruption in the arbitrators, or either of them." In *Kaplan v. First Options of Chi., Inc.*, the Third Circuit stated that "[i]n order to show 'evident partiality,' 'the challenging party must show [that] "a reasonable person would have to conclude that the arbitrator was partial" to the other party in the arbitration.' " 19 F.3d 1503, 1523 n. 30 (3d Cir.1994) (quoting *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989)). The Third Circuit stated further in *Kaplan* that " '[e]vident partiality' is strong language and requires proof of circumstances 'powerfully suggestive of bias.' " *Id.* (quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 681–82 (7th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711, *mandate modified*, 728 F.2d 943 (7th Cir.1984)). Here, that stringent standard has not been met.

ALICO argues that Mr. Zoeller's prior relationship with one of Parra's attorneys created a situation of "evident partiality" in Parra's favor. However, the fact that one of the arbitrators had been a law partner with one of Parra's attorneys does not justify vacating the arbitration award, particularly when the issue of the relationship was fully aired and rejected by the arbitration panel pursuant to IACAC rules and procedures. Under the circumstances of this case, the relationship does not create or demonstrate the type of bias envisioned by the Court in *Kaplan*. Accordingly, the Court will not vacate the

arbitrators' decision for "evident partiality."

ALICO next argues that the arbitration award should be modified because the arbitrators exceeded their scope of authority when they awarded Parra post-judgment interest at the Delaware statutory rate. In this regard, ALICO does not direct the Court's attention to a specific provision of the FAA authorizing the relief it requests, nor does ALICO direct the Court's attention to a specific ground for modification provided for in an applicable section of the FAA. Nevertheless, the Court will address ALICO's argument in the terms in which it is couched by ALICO. ALICO asserts that the Third Circuit's statement in *Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 63 (3d Cir.1986), mandates modifying the arbitration award. In *Sun Ship,* the Third Circuit stated that the arbitrators involved in that case "lacked authority to decide . . . [the] question of prejudgment interest." *Id.* at 63. That is the sole basis for ALICO's arguments and it is not sufficient. The statement proffered by ALICO is taken out of context and no contextual explanation is offered justifying the result ALICO seeks.

ALICO's last argument for modification concerns an issue the Court has previously addressed. ALICO requests that the Court modify the arbitration award to provide for the return of consideration, plus interest, it paid to Parra for executing the General Release. On February 25, 2002, the Court held that ALICO is entitled to a return of that consideration, plus interest. (D.I. 249 at 1–2.) The Court also noted that if the arbitration panel did not address the issue, the Court retained jurisdiction to enforce the February 25, 2002 Order. (*Id.*) The Third Circuit affirmed the Court's decision on November 21, 2002. (D.I.273.) Because the arbitrators failed to resolve the issue, the matter remains before the Court. The Court, however, need not modify the parties' arbitration award to effectuate its earlier Order. Instead, the Court can and will order that the amount in question be set-off against the amount awarded Parra at arbitration

## IV. CONCLUSION

Parra's motion (D.I.252) to vacate or modify, in part, and confirm the parties May 24, 2002, arbitration award is denied in part and granted in part. It is denied to the extent it seeks to vacate or modify the award. It is granted to the extent it requests that the award be confirmed. Similarly, ALICO's motion (D.I.256) is denied in part and granted in part. It is denied to the extent it seeks to vacate or modify the parties' May 24, 2002 arbitration award. It is granted to the extent that it requests the Court to effectuate its February 25, 2002 Order (D.I.249.) The release consideration that ALICO paid Parra for executing the October 1, 1994 General Release, plus interest, will be set-off against the parties' arbitration award in the Court's Order confirming the award. An appropriate Order will issue.

### *ORDER*

Pursuant to the Court's Opinion of today's date in this matter,

IT IS HEREBY ORDERED that:

1.  Parra's motion (D.I.252) to vacate or modify, in part, and confirm the parties' May 24, 2002, arbitration award is DENIED IN PART and GRANTED IN PART:

    a.  It is DENIED to the extent it seeks to vacate or modify the arbitration award;

    b.  It is GRANTED to the extent it requests that the arbitration award be confirmed;

2. ALICO's motion (D.I.256) to vacate or modify the parties' May 24, 2002 arbitration award is DENIED IN PART and GRANTED IN PART:

   a. It is DENIED to the extent it seeks to vacate or modify the arbitration award;

   b. It is GRANTED to the extent that it requests the Court to effectuate the February 25, 2002 Order of this Court (D.I.249);

3. The arbitration award between ALICO and Parra dated May 24, 2002 is confirmed;

4. The release consideration ALICO paid to Parra for executing the October 1, 1994 General Release, a sum of $127,292.30, plus interest thereon from October 1, 1994 at the statutory rate provided in 28 U.S.C. § 1961 to the date of this Order, shall be set-off against the payment of the arbitration award from ALICO to Parra.