

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-7-2008

# Millennium v. Thompson

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1189

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Millennium v. Thompson" (2008). *2008 Decisions.* Paper 701.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/701

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1189

_____

MILLENNIUM VALIDATION SERVICES INC.,

Appellant.

v.

ALFRED THOMPSON

v.

GARY NIENABER; JOSEPH MUSIKE,

Third-Party Defendants.

_____

On Appeal from the United States District Court
for the District of Delaware
(D. C. No. 02-cv-01430)
District Judge: Hon. Gregory M. Sleet

_____

Submitted under Third Circuit LAR 34.1(a)
on May 12, 2008

Before: McKEE and ROTH, <u>Circuit Judges</u>
O'NEILL*, <u>District Judge</u>

(Filed August 7, 2008)

_____

*Honorable Thomas N. O'Neill, Jr., United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

**ROTH,** Circuit Judge:

Millennium Validation Services, Inc. (Millennium) appeals the order of the United States District Court for the District of Delaware denying Millennium's motion to vacate or modify an arbitration award, as well as the District Court's order denying Millennium's subsequent motion for reconsideration. The issue on appeal is whether the Arbitrator exceeded his power in rejecting the valuation of Alfred Thompson's shares as determined by Millennium's accountant.[1] For the reasons set forth below, we will affirm the judgment of the District Court.

**I. Background and Procedural History**

Because the facts are well known to the parties, we will discuss them only briefly here.

Thompson, Joseph Musike, and Gary Nienaber founded Millennium in 1999 to perform validation services. All three individuals were Millennium shareholders and signed

---

[1]Millennium also argues that the Arbitrator exceeded his power by ordering the parties to conduct a subsequent hearing on the issue of Thompson's claim for attorneys' fees and costs. Because this issue appeared to be pending, we questioned whether there was a final, appealable order in this case and directed the parties to respond regarding the possible dismissal of the case. The parties responded as requested, both asserting that the District Court's order was final notwithstanding the attorneys' fees issue. However, in his brief, Thompson states that he has waived his right to seek attorneys' fees and costs. As such, we need not consider this issue in rendering this opinion.

2

a Shareholders' Agreement (SA) in November 1999.

The present dispute is the result of Thompson's withdrawal from Millennium in 2001. Thompson refused to withdraw at a special meeting of the three shareholders held on November 20, 2001. After Thompson left the meeting, Musike and Nienaber voted that good cause existed pursuant to the SA to compel Thompson to withdraw. Thompson rejected this attempt to remove him as a shareholder and asserted that it constituted a breach of fiduciary duty.

Millennium nevertheless proceeded with a buy-out of Thompson's shares. Paragraph 12 of the SA provided that, upon a shareholder's withdrawal, Millennium "shall purchase," and the withdrawing shareholder "shall sell," "such Shareholder's entire interest in the Company." Paragraph 12 provided further that the purchase price was the Share Value, as defined by the SA, multiplied by the total number of shares held by the withdrawing shareholder.

Millennium asked an independent certified public accountant, Anthony D'Amato, to compute the fair value of the company's shares. Under Paragraph 11 of the SA,

> The fair value of shares ("Share Value") for each share issued and outstanding shall be calculated as an amount equal to (1) the total book value of all the Company's assets and property divided by (2) the number of shares of stock then issued and outstanding. Said Share Value shall be computed by the independent certified public accountant or firm then servicing the Company, in accordance with

3

> Generally Accepted Accounting Principles and the guidelines of the American Institute of Certified Public Accountants, and shall be binding upon all Shareholders absent a showing of fraud

D'Amato revised the valuation of Millennium multiple times, and Thompson hired his own accountant who produced yet another book value. In Millennium's final calculation, dated May 8, 2002, the price of Thompson's shares was $115,643, which Millennium proposed to pay over an extended period.

Millennium subsequently suspended the buy-out after discovering that Thompson was working for Global Turnkey Services, thereby, in Millennium's view, violating the SA's covenant not to compete. On July 24, 2002, Millennium filed a Complaint in Delaware's Chancery Court, alleging breach of contract and tortious interference with prospective contractual relations. Thompson counterclaimed, alleging, among other claims, breach of the covenant of good faith and fair dealing and breach of the SA based on Millennium's failure to pay him for the value of his shares. Thompson alleged further that Millennium had failed to negotiate the valuation issue in good faith. He sought, among other relief, a declaratory judgment as to his compensation for his shares in Millennium.

The case was removed to the U.S. District Court for the District of Delaware. On October 25, 2004, the parties filed a stipulation providing, "The [captioned] matter is referred, in its entirety, to a binding arbitration hearing which will be governed by the parties [*sic*] agreement entered into on October 7 and October 8, 2004." The October 7

4

correspondence, in turn, provided, "The issues raised in the pleadings in the captioned action (Complaint, Answer, Counterclaim, Third Party Complaint, Reply to Counterclaim and Answer to Third Party Complaint) will be submitted to binding arbitration . . . ."

On March 7, 2005, the Arbitrator issued an Award, denying Millenium's claims for breach and for tortious interference. The Arbitrator allowed Thompson's claim for share value in the amount of $214,667, plus $41,981 in interest. The Arbitrator denied Millennium's subsequent request for clarification.

On April 12, 2005, Millennium filed a motion with the District Court to vacate or modify the arbitration Award.[2] The District Court denied the motion, concluding that Millennium had voluntarily agreed to arbitrate the entire dispute, including the valuation issue. Millennium filed a motion for reconsideration, which the District Court also denied. Millennium appealed.

## II. Analysis

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

Millennium argues that the Arbitrator exceeded his power in awarding Thompson a share value other than that calculated by D'Amato. In its briefing before the Arbitrator, Millennium asserted that, pursuant to the SA, D'Amato's share valuation was binding absent

---

[2]Thompson filed an application to confirm the Award on April 12, 2005.

fraud. Accordingly, Millennium claims that the only arbitrable issue with respect to valuation was whether it was fraudulent.

Whether the valuation issue is arbitrable, and, in turn, whether the Arbitrator exceeded his power, is a matter of contract interpretation; contract interpretation is a question of law over which we exercise plenary review. *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 624-25 (3d Cir. 2003). However, a party may not challenge an arbitrator's authority to resolve a claim once the parties have mutually agreed to arbitrate the matter. *United Indus. Workers v. Government of the Virgin Islands*, 987 F.2d 162, 168 (3d Cir. 1993). "The parties, therefore, define the scope of the arbitrator's jurisdiction by agreement." *Id.* "An arbitration agreement . . . need not be express, but may also be inferred from the conduct of the parties." *Id.*

In this case, Millennium and Thompson agreed to arbitrate "[t]he issues raised in the pleadings in the captioned action (Complaint, Answer, Counterclaim, Third Party Complaint, Reply to Counterclaim and Answer to Third Party Complaint)." These issues included Thompson's claims that Millennium had failed to negotiate in good faith, breached the covenant of good faith and fair dealing by offering a "take-it-or-leave-it" buy-out offer outside of the mediation process, and refused to allow Thompson to inspect Millennium's books and records to determine the value of his shares. Thompson specifically requested a declaratory judgment as to compensation for his shares. While it is true that Paragraph 11 of the SA provides that Share Value, as determined pursuant to the SA is "binding upon all

6

Shareholders absent a showing of fraud," Millennium expressly agreed to arbitrate the issues raised in the pleadings. Those issues included compensation for Thompson's shares.[3] As such, Millennium may not now challenge the Arbitrator's authority to determine that issue.

## III. Conclusion

For the reasons set forth above, we will affirm the judgment of the District Court.

---

[3]This case is distinguishable from *Katz v. Feinberg*, 290 F.3d 95 (2d Cir. 2002), in which the Second Circuit held that a separate valuation provision in a Purchase Agreement removed determination of the share price from the arbitrator. In *Katz*, the arbitration clause and the valuation provision were both part of the same agreement; the valuation provision being more specific, the Second Circuit held that it governed. *Id.* at 97-98. In this case, in contrast, the arbitration agreement is separate from the SA and represents an independent agreement to arbitrate all of the issues included in the pleadings.